# GREENE ET AL. *v.* LINDSEY ET AL.

No. 81–341.   Argued February 23, 1982—Decided May 17, 1982

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MAR-SHALL, BLACKMUN, POWELL, and STEVENS, JJ., joined. O'CONNOR, J., filed a dissenting opinion, in which BURGER, C. J., and REHNQUIST, J., joined, *post*, p. 456.

*William L. Hoge III* argued the cause and filed a brief for appellants.

*Robert Frederick Smith* argued the cause for appellees. With him on the brief was *Barry L. Master.**

JUSTICE BRENNAN delivered the opinion of the Court.

A Kentucky statute provides that in forcible entry or detainer actions, service of process may be made under certain circumstances by posting a summons on the door of a tenant's apartment. The question presented is whether this statute, as applied to tenants in a public housing project, fails to afford those tenants the notice of proceedings initiated against them required by the Due Process Clause of the Fourteenth Amendment.

*Lynn E. Cunningham* filed a brief for the Antioch School of Law et al. as *amici curiae* urging affirmance.

*David M. Madway* filed a brief for the National Housing Law Project as *amicus curiae*.

## I

Appellees Linnie Lindsey, Barbara Hodgens, and Pamela Ray are tenants in a Louisville, Ky., housing project. Appellants are the Sheriff of Jefferson County, Ky., and certain unnamed Deputy Sheriffs charged with responsibility for serving process in forcible entry and detainer actions. In 1975, the Housing Authority of Louisville initiated detainer actions against each of appellees, seeking repossession of their apartments. Service of process was made pursuant to Ky. Rev. Stat. § 454.030 (1975), which states:

> "If the officer directed to serve notice on the defendant in forcible entry or detainer proceedings cannot find the defendant on the premises mentioned in the writ, he may explain and leave a copy of the notice with any member of the defendant's family thereon over sixteen (16) years of age, and if no such person is found he may serve the notice by posting a copy thereof in a conspicuous place on the premises. The notice shall state the time and place of meeting of the court."

In each instance, notice took the form of posting a copy of the writ of forcible entry and detainer on the door of the tenant's apartment.[1] Appellees claim never to have seen these posted summonses; they state that they did not learn of the

---

[1] "Posting" refers to the practice of placing the writ on the property by use of a thumbtack, adhesive tape, or other means. App. 74, 77 (deposition of process servers). Appellants describe the usual method of effecting service pursuant to § 454.030 in the following terms:

"The officer of the court who is charged with serving notice in a forcible entry and detainer action, usually a Jefferson County Deputy Sheriff, takes the following steps in notifying a tenant. First, the officer goes to the apartment in an effort to effectuate personal in-hand service. Second, if the named tenant is absent or will not appear at the door, personal in-hand service is made on any member of the tenant's family over sixteen years of age. Finally, if no one answers the door, a copy of the notice is posted on the premises, usually the door." Brief for Appellants 3.

eviction proceedings until they were served with writs of possession, executed after default judgments had been entered against them, and after their opportunity for appeal had lapsed.

Thus without recourse in the state courts, appellees filed this suit as a class action in the United States District Court for the Western District of Kentucky, seeking declaratory and injunctive relief under 42 U. S. C. § 1983. They claimed that the notice procedure employed as a predicate to these eviction proceedings did not satisfy the minimum standards of constitutionally adequate notice described in *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306 (1950), and that the Commonwealth of Kentucky had thus failed to afford them the due process of law guaranteed by the Fourteenth Amendment. Named as defendants were the Housing Authority of Louisville, several public officials charged with responsibility over particular Louisville public housing projects, Joseph Greene, the Jefferson County Sheriff, and certain known and unknown Deputy Sheriffs.

On cross-motions for summary judgment, the District Court granted judgment for appellants. In an unreported opinion, the court noted that some 70 years earlier, in *Weber* v. *Grand Lodge of Kentucky, F. & A. M.*, 169 F. 522 (1909), the Court of Appeals for the Sixth Circuit had held that constructive notice by posting on the door of a building, pursuant to the predecessor statute to § 454.030, provided an adequate constitutional basis upon which to commence an eviction action, on the ground that it was reasonable for the State to presume that a notice posted on the door of the building in dispute would give the tenant actual notice in time to contest the action. Although the District Court recognized that "conditions have changed since the decision in *Weber* . . . and . . . that there is undisputed testimony in this case that notices posted on the apartment doors of tenants are often removed by other tenants," App. 41–42, the court nevertheless concluded that the procedures employed did not deny due

process in light of the fact "that posting only comes into play after the officer directed to serve notice cannot find the defendant on the premises," *id.*, at 42.

The Court of Appeals for the Sixth Circuit reversed the grant of summary judgment in favor of appellants and remanded the case for further proceedings. 649 F. 2d 425 (1981). Acknowledging that its decision in *Weber* directed a contrary result, the Court of Appeals examined the doctrinal basis of that decision, and concluded that it rested in part on distinctions between actions *in rem* and actions *in personam* that had been drawn in cases such as *Pennoyer* v. *Neff*, 95 U. S. 714 (1878); *Huling* v. *Kaw Valley Railway & Improvement Co.*, 130 U. S. 559 (1889); *Arndt* v. *Griggs*, 134 U. S. 316 (1890); *Ballard* v. *Hunter*, 204 U. S. 241 (1907); and *Longyear* v. *Toolan*, 209 U. S. 414 (1908), and that had been substantially undercut by intervening decisions of this Court. In overruling *Weber*, the Court of Appeals cited *International Shoe Co.* v. *Washington*, 326 U. S. 310 (1945), *Mullane, supra*, and *Shaffer* v. *Heitner*, 433 U. S. 186 (1977), as cases calling for a more realistic appraisal of the adequacy of process provided by the State. Turning to the circumstances of this case and the procedures contemplated by § 454.030, the Court of Appeals noted that while there may have been "a time when posting provided a surer means of giving notice than did mailing, [t]hat time has passed. The uncontradicted testimony by process servers themselves that posted summonses are not infrequently removed by persons other than those served constitutes effective confirmation of the conclusion that notice by posting 'is not reasonably calculated to reach those who could easily be informed by other means at hand,' " 649 F. 2d, at 428, quoting *Mullane, supra*, at 319.[2] The court held, therefore, that the notice provided

---

[2] The Court of Appeals concluded that "[r]equiring Kentucky to provide notice by mail when personal service proves infeasible will not be overly burdensome. The cost will be minimal, and the state's conceded interest

pursuant to § 454.030 was constitutionally deficient. We noted probable jurisdiction, 454 U. S. 938 (1981), and now affirm.

## II

## A

"The fundamental requisite of due process of law is the opportunity to be heard." *Grannis* v. *Ordean*, 234 U. S. 385, 394 (1914). And the "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest," *Mullane, supra*, at 314. Personal service guarantees actual notice of the pendency of a legal action; it thus presents the ideal circumstance under which to commence legal proceedings against a person, and has traditionally been deemed necessary in actions styled *in personam*. *McDonald* v. *Mabee*, 243 U. S. 90, 92 (1917). Nevertheless, certain less rigorous notice procedures have enjoyed substantial acceptance throughout our legal history; in light of this history and the practical obstacles to providing personal service in every instance, we have allowed judicial proceedings to be prosecuted in some situations on the basis of procedures that do not carry with them the same certainty of actual notice that inheres in personal service. But we have also clearly recognized that the Due Process Clause does prescribe a constitutional minimum: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice reasonably calculated, under all the circumstances, to apprise interested parties of the*

---

in providing a summary procedure for settlement of landlord-tenant disputes will not be seriously circumscribed." 649 F. 2d, at 428. The court then noted with approval the provisions of the New York counterpart of § 454.030, which provides that when notice is served by posting, a copy of the petition must be sent by registered or certified mail within a day of the posting. *Ibid.*, citing *Velazquez* v. *Thompson*, 451 F. 2d 202, 205 (CA2 1971).

*pendency of the action* and afford them an opportunity to present their objections." *Mullane*, 339 U. S., at 314 (emphasis added). It is against this standard that we evaluate the procedures employed in this case.

## B

Appellants argue that because a forcible entry and detainer action is an action *in rem*, notice by posting is *ipso facto* constitutionally adequate. Appellees concede that posting has traditionally been deemed appropriate for *in rem* proceedings, but argue that detainer actions can now encompass more than the simple issue of the tenant's continued right to possession, and that they therefore require the more exacting forms of notice customarily provided for proceedings *in personam*. Appellants counter by conceding that if the particular detainer proceeding was one in which the landlord sought to recover past due rent, personal service would be required by Kentucky law, but argue that such claims are unusual in such proceedings, and that in the case before us the landlord claimed only a right to recover possession. Tr. of Oral Arg. 19–21.

As in *Mullane*, we decline to resolve the constitutional question based upon the determination whether the particular action is more properly characterized as one *in rem* or *in personam*. 339 U. S., at 312. See *Shaffer* v. *Heitner*, *supra*, at 206. That is not to say that the nature of the action has no bearing on a constitutional assessment of the reasonableness of the procedures employed. The character of the action reflects the extent to which the court purports to extend its power, and thus may roughly describe the scope of potential adverse consequences to the person claiming a right to more effective notice. But "'[a]ll proceedings, like all rights, are really against persons.'"[3] In this case, appellees

---

[3] *Shaffer* v. *Heitner*, 433 U. S. 186, 207, n. 22 (1977), quoting *Tyler* v. *Court of Registration*, 175 Mass. 71, 76, 55 N. E. 812, 814 (Holmes, C. J.), writ of error dism'd, 179 U. S. 405 (1900).

have been deprived of a significant interest in property: indeed, of the right to continued residence in their homes.[4]   In light of this deprivation, it will not suffice to recite that because the action is *in rem*, it is only necessary to serve notice "upon the thing itself."[5]   The sufficiency of notice must be tested with reference to its ability to inform people of the pendency of proceedings that affect their interests.   In arriving at the constitutional assessment, we look to the realities of the case before us: In determining the constitutionality of a procedure established by the State to provide notice in a particular class of cases, "its effect must be judged in the light of its practical application to the affairs of men as they are ordinarily conducted."   *North Laramie Land Co.* v. *Hoffman,* 268 U. S. 276, 283 (1925).

It is, of course, reasonable to assume that a property owner will maintain superintendence of his property, and to presume that actions physically disturbing his holdings will come to his attention.   See *Mullane, supra,* at 316.[6]   The

---

[4] The dissent directs our attention to the "nature and purpose," of Kentucky's forcible entry and detainer action.   *Post,* at 457.   Such proceedings are designed to offer an expeditious means of determining who is entitled to retain possession of an apartment.   But that hardly explains why we may dispense with the constitutional requirement of adequate notice. After all, detainer proceedings, while in some sense "summary," are *proceedings* in which issues of fact and law are to be resolved, and important interests in property determined.   We can agree with the dissent's observation that the "means chosen for making service of process . . . must be prompt and certain."   *Ibid.*   But it is difficult to see how, from the perspective of the landlord, any of the likely supplements to the form of service currently provided under § 454.030 will render the procedure markedly less prompt or certain.   More significantly, *from the perspective of the tenant,* it is difficult to see how a means of serving process that fails to afford actual notice in a "not insubstantial" number of cases can be deemed *either* prompt or certain.

[5] *The Mary,* 9 Cranch 126, 144 (1815).

[6] As we noted in *Mullane:*

"The ways of an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or propri-

frequent restatement of this rule impresses upon the property owner the fact that a failure to maintain watch over his property may have significant legal consequences for him, providing a spur to his attentiveness, and a consequent reinforcement to the empirical foundation of the principle. Upon this understanding, a State may in turn conclude that in most cases, the secure posting of a notice on the property of a person is likely to offer that property owner sufficient warning of the pendency of proceedings possibly affecting his interests.

The empirical basis of the presumption that notice posted upon property is adequate to alert the owner or occupant of property of the pendency of legal proceedings would appear to make the presumption particularly well founded where notice is posted at a residence. With respect to claims affecting the continued possession of that residence, the application of this presumption seems particularly apt: If the tenant has a continuing interest in maintaining possession of the property for his use and occupancy, he might reasonably be expected to frequent the premises; if he no longer occupies the premises, then the injury that might result from his not having received actual notice as a consequence of the posted notice is reduced. Short of providing personal service, then, posting notice on the door of a person's home would, in many

etary rights. Hence, . . . entry upon real estate in the name of law may reasonably be expected to come promptly to the owner's attention. . . . A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing, . . . or that he has left some caretaker under a duty to let him know that it is being jeopardized." 339 U. S., at 316.

Of course, the *Mullane* discussion of the special notice rules with respect to proceedings affecting property ownership focused on the forms of notice that might be appropriate as a supplement to the direct disturbance of the property itself. But where the State has reason to believe the premises to be occupied or under the charge of a caretaker, notice posted on the premises, if sufficiently apparent, is itself a form of disturbance, likely to come to the attention of the occupants or the caretaker.

or perhaps most instances, constitute not only a constitution-
ally acceptable means of service, but indeed a singularly ap-
propriate and effective way of ensuring that a person who
cannot conveniently be served personally is actually apprised
of proceedings against him.

But whatever the efficacy of posting in many cases, it is
clear that, in the circumstances of this case, merely posting
notice on an apartment door does not satisfy minimum stand-
ards of due process. In a significant number of instances,
reliance on posting pursuant to the provisions of § 454.030
results in a failure to provide actual notice to the tenant
concerned. Indeed, appellees claim to have suffered pre-
cisely such a failure of actual notice. As the process servers
were well aware, notices posted on apartment doors in the
area where these tenants lived were "not infrequently" re-
moved by children or other tenants before they could have
their intended effect.[7] Under these conditions, notice by

---

[7] The depositions before the District Court included the following state-
ments by the process servers:

"The children—we had problems with children. They would take [the
writs] off.

"They never took them off when we were present, but we, you know,
assume—the Housing Authority told us that they would take them off, so
we always put them up high." App. 74.

"Q. Did you ever see kids pulling them off?
"A. Yes.
"Q. You did?
"A. Uh-huh.
"Q. Did you see many?
"A. No, not too many. I did see it in one place over there.
"Q. Where was that?
"A. Village West.
"Q. How many times did you see that happen?
"A. Well, probably a couple of times." *Id.*, at 80.

"Q. . . . Were you aware of there being any problem with children rip-
ping the Writs off?
"A. Oh, we had plenty of trouble.

posting on the apartment door cannot be considered a "reliable means of acquainting interested parties of the fact that their rights are before the courts." *Mullane*, 339 U.S., at 315.

Of course, the reasonableness of the notice provided must be tested with reference to the existence of "feasible and customary" alternatives and supplements to the form of notice chosen. *Ibid.* In this connnection, we reject appellants' characterization of the procedure contemplated by § 454.030 as one in which "'posting' is used as a method of service only as a last resort." Brief for Appellants 7. To be sure, the statute requires the officer serving notice to make a visit to the tenant's home and to attempt to serve the writ personally on the tenant or some member of his family. But if no one is at home at the time of that visit, as is apparently true in a "good percentage" of cases,[8] posting follows forthwith. Neither the statute, nor the practice of the process servers, makes provision for even a second attempt at personal service, perhaps at some time of day when the tenant is more likely to be at home. The failure to effect personal service on the first visit hardly suggests that the tenant has abandoned his interest in the apartment such that mere *pro forma* notice might be held constitutionally adequate. Cf. *Mullane*, 339 U. S., at 317–318.

---

"Q. You had trouble?

"A. With kids, yeah. Yeah.

"Q. Did you ever see kids ripping them off?

"A. Yeah. I have seen them take them off of the door and I would go back and tell them to put it back. They don't know. They didn't know. They just—

.        .        .        .        .

"Q. Were there any particular places where you saw kids ripping them off the doors?

"A. Well most of that was in Village West." *Id.*, at 82.

[8] *Id.*, at 76 (deposition of process server).

As noted by the Court of Appeals, and as we noted in *Mullane*, the mails provide an "efficient and inexpensive means of communication," *id.*, at 319, upon which prudent men will ordinarily rely in the conduct of important affairs, *id.*, at 319–320. Notice by mail in the circumstances of this case would surely go a long way toward providing the constitutionally required assurance that the State has not allowed its power to be invoked against a person who has had no opportunity to present a defense despite a continuing interest in the resolution of the controversy.[9] Particularly where the subject matter of the action also happens to be the mailing address of the defendant, and where personal service is ineffectual, notice by mail may reasonably be relied upon to provide interested persons with actual notice of judicial proceedings. We need not go so far as to insist that in order to "dispense with personal service the substitute that is most likely to reach the defendant is the least that ought to be required," *McDonald* v. *Mabee*, 243 U. S., at 92, in order to recognize that where an inexpensive and efficient mechanism such as mail service is available to enhance the reliability of an otherwise unreliable notice procedure, the State's continued exclusive reliance on an ineffective means of service is not notice "reasonably calculated to reach those who could

---

[9] The dissent apparently wishes to dispute the District Court's finding that "notices posted on apartment doors are often removed," and further questions our reliance on the observation in *Mullane* that the mails are a reliable means of communication—in light of its own observation that "unattended mailboxes are subject to plunder." *Post*, at 460. The dissent misconstrues the constitutional standard. In light of the findings of the courts below, we hold only that posted notice pursuant to § 454.030 is constitutionally inadequate. It is not our responsibility to prescribe the form of service that the Commonwealth should adopt. But even conceding that process served by mail is far from the ideal means of providing the notice the Due Process Clause of the Fourteenth Amendment requires, we have no hesitation in concluding that posted service *accompanied by* mail service, is constitutionally preferable to posted service alone.

easily be informed by other means at hand." *Mullane, supra*, at 319.[10]

### III

We conclude that in failing to afford appellees adequate notice of the proceedings against them before issuing final orders of eviction, the State has deprived them of property without the due process of law required by the Fourteenth Amendment. The judgment of the Court of Appeals is therefore

*Affirmed.*

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE and JUSTICE REHNQUIST join, dissenting.

Today, the Court holds that the Constitution prefers the use of the Postal Service to posted notice. The Court reaches this conclusion despite the total absence of any evidence in the record regarding the speed and reliability of the mails. The sole ground for the Court's result is the scant and conflicting testimony of a handful of process servers in Kentucky. On this flimsy basis, the Court confidently overturns the work of the Kentucky Legislature and, by implication, that of at least 10 other States. I must respectfully dissent.

At a minimum, the Fourteenth Amendment requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314 (1950). The question before the Court is whether the notice provided by Kentucky's statute meets this standard. In answering that question, the first "circumstances"

---

[10] "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." 339 U. S., at 318. See *Schroeder* v. *City of New York*, 371 U. S. 208, 213 (1962).

to be considered are the nature and purpose of the action for which notice is required.

Kentucky's forcible entry and detainer action is a summary proceeding for quickly determining whether or not a landlord has the right to immediate possession of leased premises and, if so, for enabling the landlord speedily to obtain the property from the person in wrongful possession. Ky. Rev. Stat. §§ 383.200, 383.210 (1972). As this Court has recognized, such circumstances call for special procedures:

> "There are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants. The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else. Many expenses of the landlord continue to accrue whether a tenant pays his rent or not. Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease or rental agreement gives him the right to peaceful and undisturbed possession of the property." *Lindsey* v. *Normet,* 405 U. S. 56, 72–73 (1972).

The means chosen for making service of process, therefore, must be prompt and certain, for otherwise the principal purpose of a forcible entry and detainer action could be thwarted before the judicial proceedings even began.

The Kentucky statute meets this need. It directs the process server to attempt personal service on the tenant at his residence. Ky. Rev. Stat. § 454.030 (1975). If the process server cannot find the tenant on the premises, the statute directs the server to explain and leave a copy of the notice

with a family member over the age of 16.  *Ibid.*  If both of these attempts fail, Kentucky authorizes the server, as a last resort, to post a copy of the notice in a conspicuous place on the premises.  *Ibid.*

As the Court recognizes, notice procedures like Kentucky's, though "less rigorous" than mandatory personal service, nonetheless "have enjoyed substantial acceptance throughout our legal history."  *Ante,* at 449.  The weight of historical precedent is reinforced by the collective wisdom of the legislatures of the at least 11 States authorizing notice in summary eviction proceedings solely by posting or by leaving the notice at the tenant's residence.[1]  The Court itself acknowledges that "posting notice on the door of a person's home would, in many or perhaps most instances, constitute . . . a singularly appropriate and effective way of ensuring that a person who cannot conveniently be served personally is actually apprised of proceedings against him."  *Ante,* at 452–453.

The Court nonetheless rejects these established procedures as unconstitutional, though it does not cite a single case, other than the decision below, supporting its position that notice by posting is constitutionally inadequate in summary eviction proceedings.  Instead, the Court relies solely on the deposition testimony of a few Kentucky process servers.

The testimony is hardly compelling.  For example, one process server, Mr. S. Carter Bacon, reported having seen children in the Village West housing development pull down posted writs "probably a couple of times."  App. 80; App. in No. 79–3477 (CA6), p. 103.  The Court neglects to mention,

---

[1] See Ala. Code §§ 6–6–332, 35–9–82 (1975); Colo. Rev. Stat. § 13–40–112 (1973); Fla. Stat. § 48.183 (1979); Kan. Stat. Ann. § 61–1805 (1976); Ky. Rev. Stat. § 454.030 (1975); La. Code Civ. Proc. Ann., Art. 4703 (West 1961); Miss. Code Ann. § 89–7–33 (1972); Neb. Rev. Stat. § 25–508 (1979); N. H. Rev. Stat. Ann. §§ 510:2, 540:5 (Supp. 1979); N. C. Gen. Stat. § 42–29 (1976); W. Va. Code § 56–2–1 (1966), W. Va. Rule Civ. Proc. 4(d)(1) (1982).

however, that another process server, Mr. Gilbert Brutscher, cast doubt on Mr. Bacon's testimony by stating:

"I had been warned beforehand that, by Mr. Bacon, Carter Bacon, that he suspected—he wasn't certain, but he suspected that on some occasions the Writs had been torn off the doors by kids. This is what he told me. Whether that is true or not, I don't know. And I don't think that he observed that, and the six months I was working at it there was no occasion where I saw anyone tear the Writs off of the door." *Id.*, at 112–113.

The Court also neglects to mention that another process server testified that in order to avoid problems with children, the process servers "always put [the writs] up high. So we never had any problems with that." App. 74. Corroborating this testimony, moreover, is the testimony of yet another process server, who asserted: "we always try to put the paper up above where, a, say a small child can't reach it." App. in No. 79–3477 (CA6), p. 74. This server, asked whether he had "had complaints about small children ripping them off," answered that he had never had a complaint and had never seen a child try to rip a notice off. *Ibid.*

Plainly, such conflicting testimony falls well short of what this Court should require before rushing to scrap Kentucky's considered legislative judgment that, as a last resort, posted notice is an appropriate form of service of process for forcible entry and detainer actions.

The Court, however, holds that notice via the mails is so far superior to posted notice that the difference is of constitutional dimension.[2] How the Court reaches this judgment re-

---

[2] The Court gives lipservice to the principle that "[i]t is not our responsibility to prescribe the form of service that [Kentucky] should adopt," *ante*, at 455, n. 9, but then goes on to do just that, first by explaining to the state legislature that, unlike notice by posting, notice by mail "would surely go a long way toward" satisfying the Court, *ante*, at 455, and then by remarking that, in the Court's view, the combination of posted service and mail service would be "constitutionally preferable" to posted service alone, *ante*, at 455, n. 9.

mains a mystery, especially since the Court is unable, on the present record, to evaluate the risks that notice mailed to public housing projects might fail due to loss, misdelivery, lengthy delay, or theft. Furthermore, the advantages of the mails over posting, if any, are far from obvious. It is no secret, after all, that unattended mailboxes are subject to plunder by thieves. Moreover, unlike the use of the mails, posting notice at least gives assurance that the notice has gotten as far as the tenant's door.

In sum, the Court has chosen to overturn Kentucky's procedures on the basis of a wholly inadequate record. In so doing, the Court apparently indulges a presumption that the state legislation challenged here is unconstitutional until proven otherwise. Regrettably, the Court seems to forget that we have long since discarded the concept that "due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely." *Ferguson* v. *Skrupa*, 372 U. S. 726, 730 (1963). I respectfully dissent.