TROY, LTD., and East Coast Condo Tech, Inc., Plaintiffs,

v.

John P. RENNA, Commissioner of N.J. Department of Community Affairs, Defendant.

Civ. No. 81–3465.

United States District Court, D. New Jersey.

Sept. 7, 1982.*

Morris M. Schnitzer, Newark, N.J., for plaintiff Troy, Ltd.

Stephen M. Spector, Teaneck, N.J., for plaintiff East Coast Condo Tech, Inc.

Thomas Greelish, Acting Atty. Gen. by Dennis R. Casale, Deputy Atty. Gen., Trenton, N.J., for defendant Renna.

Joseph H. Rodriguez, N.J. Public Advocate by Kenneth E. Meiser, Deputy Director, Trenton, N.J., for intervenors Beatrice Cohen, Yetta Brody and Elsie Ades.

MEMORANDUM

BIUNNO, Senior District Judge.

This suit challenges the validity, on federal constitutional grounds, of the "Senior Citizens and Disabled Protected Tenancy Act", c. 226, N.J.P.L.1981, approved July 27, 1981 (N.J.S.A. 2A:18–61.22 et seq).

Because some of these provisions contravene the Impairment of Contracts Clause, Art. I, sec. 10, cl. 1, and the Taking Clause of Amend. V, as applied to the States through Amendment XIV, of the United

---

* Reversed, 727 F.2d 287 (CA–3, 1984), Nos. 83–5077 and 83–5097.

States Constitution, partial summary judgment for plaintiffs will be granted. Other aspects or issues in the case, including the defendants' motions for summary judgment, are denied without prejudice.

## I

The case involves a garden apartment complex in Springfield, N.J. There are 26 buildings in the complex numbered from 1 to 27 (there is no No. 13), and about 340 residential units or apartments.

During 1980, after the municipality enacted an ordinance for rent-levelling which the owners of the complex regarded as inadequate in its allowance for automatic annual rent increases, they decided to convert the complex to condominiums pursuant to "The Planned Real Estate Development Full Disclosure Act", N.J.P.L. 1977, c. 419 (N.J.S.A. 45:22A–21 et seq.), by applying for and securing registration approval by the N.J. Department of Community Affairs and by recording of a master deed. These steps were completed before the enactment of the challenged statute, and in fact it appears that the 3-year notice to quit, one of the essential steps in the conversion process, was dated January 7, 1981, before S–3028 (the legislative bill that became NJPL 1981, c. 226) was introduced on January 22, 1981.

For a very long time, New Jersey has had statutes providing for summary dispossess proceedings in landlord/tenant matters, their object being to provide very rapid means for deciding who, for the time being, was entitled to immediate possession. The earliest of these seems to have been the Act of March 10, 1795, sec. 10 of which provided a summary procedure in cases where rent was in arrears but the tenant refused to deliver up possession, whereby the landlord was put to great expense and delay to recover by action of ejectment.

By the Act of March 4, 1847, similar means were provided in cases where a tenant held over after his lease had expired, or after his lease was terminated for breach. See the discussion of that statute in *Fry v.*

*Myers*, 56 N.J.L. 115, 28 A. 425 (Sup.1893), and *Story v. Walker*, 71 N.J.L. 256, 58 A. 349 (Sup.1904).

Over the years these statutes appeared in the Revision of 1877 and the Compiled Statutes of 1910, eventually appearing as R.S. 2:32–265 in the Revised Statutes of 1937. After the new judicial article of the 1947 Constitution took effect, the then Title 2 was revised as Title 2A, effective January 1, 1952, and the key statutory section became NJS 2A:18–53, while NJS 2A:18–56 specified the extent of notice to quit called for to terminate a tenancy at will or for an indefinite period (as, from year to year or from month to month).

For a discussion of the provisional nature of the proceeding, see *Ortiz v. Engelbrecht*, 61 F.R.D. 381 (D.N.J.1973). *Lindsay v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) reviews the common use of such statutes, and *Pernell v. Southall Realty*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974) contains a useful review of the common law background. The most recent treatment of the subject is in *Greene v. Lindsay*, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982), dealing with the service of process aspect. See, also, *Guttenberg etc. v. Rivera*, 85 N.J. 617, 428 A.2d 1289 (1981).

The two statutes mentioned, N.J.S. 2A:18–53 and 56, still remain in full force and effect except that in 1974 they were made inapplicable to certain residential tenants as to whom the 1974 law set out its own list of grounds for removal, and notices. This Act was NJPL 1974, c. 49, and the new provisions apply to residential tenants *other than* those in owner-occupied premises with not more than 2 rental units (i.e., a 2 or 3 family house), or in hotels, motels or other transient or seasonal facilities.

The 1974 Act, generally referred to as the Anti-Eviction Act, largely follows the same grounds long specified, in NJS 2A:18–53 (which still governs for all nonresidential tenancies and for those residential tenancies not governed by the 1974

Act). The major difference is that summary dispossess based on holding over after expiration of the term (or termination of an indefinite tenancy), covered by NJS 2A:18–53 a, is not provided for in the 1974 law.

Instead, new grounds are provided, such as refusal to pay an increased rental which is not unconscionable, refusal to agree to reasonable changes in rental terms, and retirement of the premises from the rental market.

Extensive changes to the 1974 law were made by NJPL 1975, c. 311. Some of these changes dealt with instances where the building is converted from the rental market to a condominium or cooperative, see NJS 2A:18-61.1(k), as amended 1975, for tenants in occupancy at the time of conversion, and 2A:18–61.1($l$) as amended 1975, for tenants whose occupancy begins *after* conversion. The former are to be given 3 years' notice, 2A:18–61.2(g), while the latter are given 2 months' notice, 2A:18–61.-2(f).

The 1975 law also calls for giving existing tenants notice of the owner's intent to convert, the full plan of conversion, and the exclusive right to acquire the unit for the first 90 days after notice, see, NJS 2A:18–61.8.

Those existing tenants who choose not to acquire their own unit are also covered by what may be called the "3 plus 5" provision, NJS 2A:18–61.11, which entitles them to make request of their landlord, within 18 months after the notice, for the rental of "comparable housing" (defined by NJS 2A:18–61.7(a)) and a reasonable opportunity to examine and rent it. In a summary dispossess action authorized by the 1975 Act based on conversion, NJS 2A:18–61.1 k, the court may authorize 1-year stays of eviction with reasonable rent increases until the court is satisfied that the tenant has been offered comparable housing and a reasonable opportunity to examine and rent it; but there is a maximum of 5 such one-year stays (thus, the "3 plus 5" label, with 3 years' notice and up to 5 years' of successive stays). The additional stay is made automatic if the landlord does not "allege" the offer of a reasonable opportunity to examine and rent comparable housing during the year passed. The court is not to grant any further stays after one stay, when the owner provides the tenant with hardship relocation compensation by waiving 5 months' rent.

This was the state of affairs when the apartment complex was converted to condominium ownership and the tenants offered their 90 day exclusive options and given 3 year notices.

It was under these conditions that investment decisions and commitments were made. These arrangements included the securing of a bank loan or commitment sufficient to satisfy the existing first mortgage in the event it were called before the date it could be prepaid without penalty, the placing of those funds as well as new mortgages on the sale of condominiums in escrow with the bank to protect the title insurance company, so that it could issue policies free of exception for the lien of the first mortgage, and so on.

II

Effective July 27, 1981, the challenged statute, NJPL, c. 226, was enacted. So far as pertinent here, its object is to insulate certain "senior citizens" from the effect of a conversion, as though the conversion had not occurred, for what amounts to lifetime protection. Disabled tenants are also dealt with by the Act, but none is involved in this case.

The "senior citizens" made eligible for protection above and beyond what was already law are those who are age 62 or more on the date when the master deed is recorded for condominium conversion, have been residential tenants (principal residence) for 2 years before the recording, and who have an "annual household income" that does not exceed 3 times the county per capita personal income as last reported by the NJ Department of Labor and Industry.

The Act is drafted for subsequent conversions. It provides machinery by which

each municipality designates one of its boards, agencies or officers to handle and rule on applications. It requires an owner seeking to convert to supply the municipality with a list of tenants, addressed stamped envelopes and a statutory notice, all of which are to be mailed by the municipality to the tenants along with written application forms. The application for registration for conversion may not be filed with the Department of Community Affairs unless accompanied by proof that the municipality has given these notices and forms.

In the case of buildings already converted, with application filed and registered and the master deed recorded, this mechanism does not apply and cannot in the nature of things because everything previously required to be done had been done and nothing called for the use of new statutory notice or application form at the time.

Instead, previously converted buildings like those involved here are sought to be brought in under it at the time that proceedings are begun for summary dispossess, which would be after the running out of the 3-year notice, or in a declaratory judgment action brought for the purpose.

At that time, the statute authorizes the State court to invoke some or all (or, presumably, none) of the provisions of the 1981 law and to grant a tenant a "protected tenancy period" of up to 40 years, where the premises were converted before the 1981 Act took effect, provided that to do so "would not be violative of concepts of fundamental fairness or due process." Even when the protected tenancy is not granted by the court, the landlord may not pay 5 months' rent (or waive 5 months' rent) to bar eviction stays beyond the first one after the 3 year notice. This provision is paragraph d, added to NJS 2A:18–61.11, by sec. 14 of the 1981 law.

Thus, where a building was converted before the 1981 Act took effect and the requisite 3-year notices given, the owner had a reasonable expectation of being able to secure possession at the expiration of 8 years, under the "3 plus 5" provision, or at the end of 4 years and 5 months by waiving 5 months' rent at the end of the first 1-year stay after the 3-year notice.

### III

As noted, sec. 14 of the 1981 Act adds par. d to N.J.S. 2A:18–61.11, which enables a court to grant a protected tenancy period of 40 years from the date of the conversion recording, see sec. 3 g and 3 h of the 1981 Act, assuming that the tenant would otherwise qualify under the 1981 Act on the basis of age, household income and period of principal residency as of that past date.

■ Whatever the analysis and result may be for premises converted after the effective date of the 1981 Act, it is inescapable that under the circumstances of this case, in which the conversion recording had already occurred and the 3-year notices given before the 1981 Act took effect, those provisions that the Act allows to be applied here contravene both the Impairment of Contracts Clause and the Taking Clause.

The Impairment of Contracts Clause is contravened, under the principles most recently expounded in *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), since the alterations authorized by the statute amount to a serious disruption of the grantee's expectations.

The Taking Clause is contravened because to apply the 1981 Act to the already converted premises would be an act of government placing in a private party the exclusive right to physical possession of specific property for an extended period of time, see *Loretto v. Teleprompter, etc.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).

### IV

■ The remaining issues in the case, mostly having to do with claims under the Due Process and Equal Protection Clauses, are regarded as not suitable for resolution by the summary judgment procedure, and hence all such motions on both sides are denied without prejudice.

In gathering materials for compilation of a record for trial on those issues, the parties are reminded that the court asked, at the argument, for the transcript of the public hearing of January 31, 1981, and for legislative history materials to be obtained from the State Library, but that the State defendants have not so far supplied these.

Also, there are items in the affidavit of Mr. Connolly that do not look as though they would stand scrutiny. For example, as noted on p. 19 of the Brief of the State Officer Defendants, it is asserted that the median value of noncondominium housing units in Salem County for 1980 was $35,200., and the median contract rent $169. Multiplying the rent by 12 to obtain an annual figure, and dividing by the value, produces a gross annual rent that is only 5.6% of value. Similarly in Union County, where the 1980 value figure is $66,900 and the contract rent $240, the gross annual rent works out to 4.3% of value. Those figures would be startlingly inadequate if they represented the net yield after all expenses and are suggestive of a net loss if they reflect gross rent before expenses, which they evidently do. Something is wrong with the statistics.

The affidavit of Mr. Baar, offered as an expert opinion, is not very helpful and raises more questions than it answers. The expert qualifications are weak as foundation for the subject discussed, and the views expressed are ambiguous. If it is intended to rely on him as an expert at trial, there should be a more explicit definition of the subject-matter addressed and a better correlated indication of his related qualifications.

For example, his discussion of so-called "fair return" formulas based on a "percentage net operating income", says that mortgage payments are not an expense under the formula but he fails to say whether he is referring to mortgage interest or mortgage principal. There is no mention of depreciation, amortization or obsolescence factors. Most of all, there is no suggestion that value is taken into account.

Given these rather glaring defects, the affidavit carries no significant weight.

In the papers submitted so far, neither side has discussed the significance of the evident absence of any provision in the challenged statute obliging any tenant who applies for a 40 year protected tenancy to undertake the payment of rent for its duration in contrast to such a tenant's unilateral right to vacate on one month's notice (see NJSA 46:8–10) at any time.

Also, the provisions of sec. 17 of the 1981 Act should be discussed in reference to the question whether the establishment of a 40 year protected tenancy creates a right of property in the tenant which the Legislature allows him to sell to the landlord, or perhaps to someone else, for "adequate consideration" and, if so, whether the Legislature can hereafter reduce the duration of the protected tenancy, or make eligibility more rigorous, and the like.

These examples in no way are intended to confine the parties in the scope and depth of their preparation for trial hereafter.

Submit order granting partial summary judgment to plaintiffs to the extent of a determination that those provisions of NJPL 1981, c. 226 as purport to apply, or authorize application, of its provisions to the subject property contravene the Impairment of Contracts Clause and the Taking of Property Clause of the United States Constitution. Since plaintiffs withdrew their class action request at argument, the order will apply only to the State Officer defendants and the individual tenants actually party here. In all other aspects than stated, the motions for summary judgment on both sides are denied without prejudice.