Filed 5/15/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CHRISTINE MARIE HAM,<br><br>　　　Defendant and Appellant. | H038784<br>(Santa Clara County<br>Super. Ct. No. 110CV171121) |

This case comes to us from the appellate division of the superior court, which granted the request of appellant Christine Ham to transfer the matter under California Rules of Court, rule 8.1005. The issue before us is whether Code of Civil Procedure section 415.45,[1] which governs service of summons in unlawful detainer actions, permits service by posting and mailing after multiple attempts to effect personal service have been unsuccessful. The appellate division, reversing the superior court, ruled that such efforts are not sufficient to comply with the "reasonable diligence" requirement of section 415.45. We agree with the superior court, however, that in the particular circumstances presented, the landlord, the Board of Trustees Of The Leland Stanford Junior University (Stanford), exercised reasonable diligence in attempting to serve appellant. We will

---

[1]  All further statutory references are to the Code of Civil Procedure.

therefore affirm the superior court's order denying the motion of appellant Christine Ham to vacate the default judgment entered against her.

*Background*

Neither party's brief on appeal offers a complete and accurate summary of the procedural history of this case accompanied by correct citations to the record. The record indicates, however, that appellant rented an apartment from Stanford on Durand Way from May 2003 through May 2010, when Stanford filed its unlawful detainer action. Until June 2008, appellant paid rent at the market rate while on the waiting list for a below-market-rate (BMR) apartment. In June 2008, however, the parties signed a one-year lease at $870 per month, the BMR rent for that unit.

Before the lease term expired, Stanford notified appellant that her rent would increase to $883 a month for the following year. After the July 2009 payment, however, Stanford informed appellant that she no longer qualified for the BMR program and that her rate would increase to $2,525 per month beginning February 1, 2010. Nevertheless, beginning in July 2009 and continuing to September 2010, appellant paid $883 per month by money order or cashier's check, accompanied by letters of unspecified content.[2] On each occasion she listed the subject property as her return address. From the end of 2009 through approximately July 31, 2010, however, appellant was on the East Coast, staying in different states and cities. Her mail was not being forwarded between February or March and August of 2010.

Stanford attempted to return the September 2009 and February 2010 checks, but appellant again submitted them to Stanford, suggesting that they had been returned to her in error. On February 17, 2010, Stanford served appellant with a three-day "Notice to

_____

[2] Stanford improperly describes one of these letters as "intemperate" without indicating anything in the record to support that representation.

2

Pay Rent or Quit" pursuant to section 1161, subdivision (2). The notice expired on February 22, and on May 5, 2010, Stanford filed its complaint for unlawful detainer.

A process server attempted to personally serve appellant with the summons at the residence on May 6, May 7, May 9, May 10, and May 11, 2010, at various times. Appellant, however, was on the East Coast during this period. According to the business manager for the apartments, Stanford repeatedly attempted to contact appellant in writing between January and July of 2010 at the only address it had, the Durand Way apartment. Although Stanford received some mail from appellant between January and October 2010, she did not provide any alternative addresses other than the Durand Way apartment, and in July 2010 Stanford learned that the postal service had been unable to forward her incoming mail.

Meanwhile, on May 18, 2010, having been unsuccessful at personal service, Stanford obtained an order from the Honorable James P. Kleinberg permitting it to serve appellant by posting a copy of the summons and complaint on the premises of the Durand Way apartment and by mailing a copy to her "last known address." Service was deemed complete on the 10th day after the posting and mailing, pursuant to section 415.45. Appellant, however, did not receive the summons and complaint,[3] and the unlawful detainer action proceeded to a default judgment on June 7, 2010. Stanford took possession of the property on June 17, 2010, and in August it rented the apartment to a new tenant.

Appellant learned of the judgment in late July of 2010. On December 7, 2010, citing sections 473 and 473.5, she moved to vacate the default and default judgment and restore her to possession of her apartment. Appellant asserted that the judgment was void

---

[3]  At the hearing on appellant's motion to vacate, her counsel submitted an offer of proof that Stanford sent the summons and complaint by certified mail, but it was not forwarded to her from the post office.

because the summons and complaint had not been properly served. Stanford, she argued, had failed to use reasonable diligence to locate her, even though it had her cell phone number, the number for her employment supervisor, and the number and address of her sister. Yet it failed to take any of those steps, thus indicating no true effort to comply with its "obligation" to ascertain her whereabouts. At the ensuing hearing appellant's counsel acknowledged that five attempts at personal service was "more than enough"; but personal service at that address, he pointed out, was "just one way to serve her." Stanford could have called her; she would have explained that she was out of state, and service could then have been made by certified mail or by personal service where she was.

Appellant urged the superior court to impose a standard of "reasonable diligence" as defined in *Watts v. Crawford* (1995) 10 Cal.4th 743. The Honorable Socrates P. Manoukian aptly pointed out, however, that this definition applied to service by publication under section 415.50, not service by posting and mailing under section 415.45. Judge Manoukian found Stanford's five attempts at personal service to have been sufficient to constitute reasonable diligence under section 415.45 and denied appellant's motion to vacate the judgment.

The appellate division of the superior court reversed. The three-judge panel acknowledged (as had appellant) that cases interpreting the term "reasonable diligence" pertained to service by publication under section 415.50, not section 415.45. Nevertheless, the court reasoned, "the fact that identical 'reasonable diligence' language is used in the two statutes strongly supports Appellant's position. Both statutes also require a court's approval prior to resorting to service by publication or posting and mailing as these are the least preferred methods of service." The appellate division rejected Stanford's reliance on section 415.20, because that statute permits substituted service after reasonable diligence in attempting *personal service*, whereas section 415.45 requires an effort to serve the defendant *in any manner* specified in sections 415.10 through 415.95. Here Stanford's attorney had recited five attempts at personal service at the

4

apartment but no facts indicating that Stanford was unable to serve her at a different location or by mail, pursuant to section 415.30 or section 415.40, nor any effort to determine her whereabouts or business address. The court thus concluded that Stanford had failed to comply with the "reasonable diligence" requirement, rendering the subsequent default judgment void on its face.

Appellant had already filed a petition to certify the matter to this court. The appellate division noted that there was no case law addressing the meaning of "reasonable diligence" under section 415.45. It therefore granted appellant's petition, reasoning that proper service in an unlawful detainer action is important, since "a defendant in an unlawful detainer action stands to lose his or her right to stay in the home." This court thereafter ordered the case transferred here for hearing and decision, pursuant to section 911 and California Rules of Court, rule 8.1002.

*Discussion*

Unlawful detainer is a unique proceeding that calls for special procedures for service of summons. Accordingly, section 415.45 provides that summons may be served on an unlawful detainer defendant by posting it on the premises, along with notice sent by certified mail to that address, if the court determines that "the party to be served cannot with reasonable diligence be served in any manner specified in this article [i.e., Article 3] other than publication . . . ." Article 3 comprises sections 415.10-415.95. The dispute in this case involves the lengths to which a plaintiff must go in exercising "reasonable diligence" under this provision.

The parties continue to debate the applicability of companion statutes governing service by other methods. Stanford maintains that the most analogous statute is section 415.20, which allows substituted service when the summons and complaint "cannot with reasonable diligence be personally delivered to the person to be served." Appellant, however, insists that the most comparable service provisions are expressed in section

5

415.50, which permits service by publication if the court determines that the defendant "cannot with reasonable diligence be served in another manner specified in this article."

The preferred way to serve a defendant, of course, is by personal delivery, as prescribed in section 415.10, as this is the most likely to ensure actual notice to the defendant. (*Evartt v. Superior Court* (1979) 89 Cal.App.3d 795, 799.) Service is deemed complete at the time of delivery. If personal delivery to the defendant "cannot with reasonable diligence be personally delivered," section 415.20 authorizes substituted service by leaving a copy with a competent adult at the defendant's residence or workplace, followed by sending the documents by first class mail addressed to defendant at the residence or workplace where the documents were delivered.[4] Service is complete upon the 10th day after the requisite copy is mailed to the defendant. Substituted service is permissible, however, "only after a good faith effort at personal service has first been made: the burden is on the plaintiff to show that the summons and complaint 'cannot with reasonable diligence be personally delivered' to the individual defendant." (*American Exp. Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 389.)

Finally, service by mail is a permissible alternative if the statutory criteria are met: the plaintiff must send the summons and complaint together with a form notice and acknowledgment of receipt. Service is complete on the date the recipient signs the

---

[4] Section 415.20, subdivision (b), provides: "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing."

acknowledgment of receipt.[5] (§ 415.30, subd. (c).) If no acknowledgment is returned within 20 days of the mailing of the summons and complaint, the recipient will be liable for reasonable expenses the plaintiff incurs in serving him or her in another manner. (§ 415.30, subd. (d).)

Neither service by mail nor substituted service requires the plaintiff to obtain permission of the court before using the alternative to personal service. The Legislature evidently was confident that these methods are acceptable as a means of giving notice to a defendant as long as the procedural criteria are met. Indeed, in order to avail oneself of substituted service under section 415.20, "[t]wo or three attempts to personally serve a defendant at a proper place ordinarily qualifies as ' "reasonable diligence." ' [Citation.]" (*American Exp. Centurion Bank v. Zara, supra,* 199 Cal.App.4th at p. 389.) By contrast, the least likely to succeed in notifying the defendant of an action against him is service by publication. For this reason, a court must first be convinced that the party to be served "cannot with reasonable diligence be served in another manner specified in [Article 3]." (§ 415.50.) "If a defendant's address is ascertainable, a method of service superior to publication must be employed, because constitutional principles of due process of law, as well as the authorizing statute, require that service by publication be utilized only as a last resort." (*Watts v. Crawford, supra,* 10 Cal.4th at p. 749, fn. 5.) In this context, " '[t]he term "reasonable diligence" . . . denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney. [Citations.] A number of honest attempts to learn defendant's whereabouts or his address by inquiry of relatives, . . . and by investigation of appropriate city and telephone directories [voters' registries

---

[5] If the person to be served is out of state, proof of service "shall include evidence satisfactory to the court establishing actual delivery to the person to be served, by a signed return receipt or other evidence." (§ 417.20 see, e.g., *Bolkiah v. Superior Court* (1999) 74 Cal.App.4th 984, 1001 [sufficient "other evidence" existed to assure court that petitioners had received actual delivery of summons].)

and the assessor's office property indices situated near the defendant's last known location] generally are sufficient.' " (*Ibid.,* quoting Judicial Council com., § 415.50.)

Neither party's comparison of section 415.45 to the selected service statutes is appropriate.  Section 415.20, as we have noted, permits substituted service when *personal service* cannot be accomplished with reasonable diligence; section 415.45 allows posting only if the person cannot be served in *any other* manner (excluding publication) notwithstanding the application of reasonable diligence.  Furthermore, unlike substituted service, the alternative of posting requires the plaintiff to make this showing to the superior court.  These safeguards clearly reflect the Legislature's concern for notice in accordance with due process.  (See *Greene v. Lindsey* (1982) 456 U.S. 444, 456 [102 S.Ct. 1874] [one attempt at personal service before posting insufficient notice, thereby violating due process].)

Yet the extraordinary measures required before publication is permitted should not be imported into section 415.45.  Publication is the last resort because it is so unlikely to give notice to the defendant that he or she is being sued.  Accordingly, it can require exhaustive attempts to locate the defendant before this method may be employed.  The unlawful detainer defendant, however, has a residence that is known to the plaintiff; it is therefore reasonable for the plaintiff to assume, at least initially, that personal service will eventually be successful.  While section 415.45 does not allow the plaintiff to rely on this assumption, we cannot agree with appellant that reasonable diligence under section 415.45 requires a landlord to conduct an extensive investigation of all the possible whereabouts of its tenant before seeking the posting alternative.  "The purpose of the unlawful detainer statutes is to provide the landlord with a summary, expeditious way of getting back his property when a tenant fails to pay the rent or refuses to vacate the premises at the end of his tenancy." (*Nork v. Pacific Coast Medical Enterprises, Inc.* (1977) 73 Cal.App.3d 410, 413; see also *Larson v. City and County of San Francisco* (2011) 192 Cal.App.4th 1263, 1297 [statutory scheme of unlawful detainer "is intended

8

and designed to provide an expeditious remedy for the recovery of possession of real property"].)  This purpose is not served by a protracted inquiry into all sources of information regarding the tenant's location before posting and mailing at the one address of which the landlord is certain.

As summary proceedings, unlawful detainer actions do not afford defendants all the procedural advantages of ordinary disputes.  "The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else. Many expenses of the landlord, continue to accrue whether a tenant pays his rent or not. Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease or rental agreement gives him the right to peaceful and undisturbed possession of the property. Holding over by the tenant beyond the term of his agreement or holding without payment of rent has proved a virulent source of friction and dispute." (*Lindsey v. Normet* (1972) 405 U.S. 56, 72-73 [92 S.Ct. 862]; see also *Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 747 [noting that certain procedural rights must be denied to prevent frustration of the summary nature of the unlawful detainer proceeding].)

Indisputably, each case must be evaluated on its own facts.  "No single formula [or] mode of search can be said to constitute due diligence in every case." (*Donel, Inc. v. Badalian* (1978) 87 Cal.App.3d 327, 333; accord, *Kott v. Superior Court* (1996) 45 Cal.App.4th 1126, 1137-1138.)  In the circumstances presented here, we cannot say that Judge Kleinberg erred in granting Stanford's request to serve the summons and complaint by posting and mailing at appellant's residence address.  Substituted service was not a viable alternative; there was no indication that any other adult might be found at the premises, and at that time, according to a declaration by Stanford's attorney in May 2010,

9

appellant apparently was not represented by counsel. Counsel also stated that Stanford did not know appellant's business address. While the declaration does not indicate that Stanford tried to discover whether she was currently employed and where, the business manager for Allied Residential Company (Allied), Stanford's property management company, provided clarification of the situation. The only employment information Allied had for appellant was her postdoctoral position at Stanford. Allied regularly verified appellant's status there because her rental rate depended on her continued status as a postdoctoral scholar. On December 14, 2009, Allied learned that appellant's postdoctoral status had been terminated as of January 5 of that year, as she had not been in "good standing" at Stanford.

Judge Manoukian was entitled to conclude that appellant could not have been personally served at a business address in any event, as she was on the East Coast during the unlawful detainer proceedings. Between January and July 2010 Allied repeatedly attempted to contact appellant in writing, and it received mail from her between January and October of 2010, but she provided no address other than the Durand Way apartment. Judge Manoukian could also have found that because the post office had not processed appellant's request to forward her mail,[6] an attempt to serve appellant by mail would have been ineffectual.[7]

---

[6] On August 9, 2010, a declaration from a district manager at the United States Postal Service indicated that due to post office error, mail addressed to appellant was returned to sender beginning in March of 2010.

[7] Indeed, as amicus, the California Apartment Association, points out, service by mail can impede the efficiency of the proceedings, as it extends the response time afforded to the person being served. Amicus suggests that posting itself should be regarded as a last resort for landlords, because it gives the defendant more time to respond, thereby delaying the eviction process beyond the time that could be achieved through personal service.

*Greene v. Lindsey, supra,* 456 U.S. 444, does not direct us to a different result. The United States Supreme Court noted the *particular* circumstances that made posting an inadequate method of affording the defendant notice in that case. There, only one attempt at personal service was made before posting, and process servers were "well aware" that at that location notices posted on apartment doors were " 'not infrequently' " removed by children or other tenants before being seen by the intended recipients. (*Id*. at p. 453-454.) The court acknowledged that the failure of notice in that case was not typical: "The empirical basis of the presumption that notice posted upon property is adequate to alert the owner or occupant of property of the pendency of legal proceedings would appear to make the presumption particularly well founded where notice is posted at a residence. With respect to claims affecting the continued possession of that residence, the application of this presumption seems particularly apt: If the tenant has a continuing interest in maintaining possession of the property for his use and occupancy, he might reasonably be expected to frequent the premises; if he no longer occupies the premises, then the injury that might result from his not having received actual notice as a consequence of the posted notice is reduced. Short of providing personal service, then, posting notice on the door of a person's home would, in many or perhaps most instances, constitute not only a constitutionally acceptable means of service, but indeed a singularly appropriate and effective way of ensuring that a person who cannot conveniently be served personally is actually apprised of proceedings against him." (*Id*. at pp. 452-453.)

We thus conclude that in the circumstances presented here, Stanford was justified in seeking service by posting and mailing under section 415.45. The court therefore properly denied appellant's motion to vacate the default and default judgment and restore her to possession.

*Disposition*

The order is affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

Trial Court:                          Santa Clara County Superior Court
                                      Appellate Division


Trial Judges:                         Hon. Kurt Kumli,
                                      Hon. Erica Yew and
                                      Hon. Carrie Zepeda and
                                      Hon. Socrates P. Manoukian


Attorneys for Appellant:              Damian R. Fernandez


Attorneys for Respondent:             Pillsbury Winthrop Shaw Pittman and
                                      Marcia L. Pope and
                                      Jessica R. Bogo


Attorneys for Amicus Curiae
  In Support of Respondent:           Pahl & McCay and
                                      Karen K. McCay