**SADDLE RIVER TP. v. ERIE R. CO. et al.**

**Civ. No. 93-49.**

United States District Court
D. New Jersey.

July 27, 1949.

Chandless, Weller, Kramer & Frank, Hackensack, N. J., and Ralph W. Chandless, Hackensack, N. J., for plaintiff.

Minard, Cooper, Gaffey & Webb, Newark, N. J., and Duane E. Minard, Newark, N. J., for Erie R. Co.

Markley & Broadhurst, Jersey City, N. J., and Edward A. Markley, Jersey City, N. J., for Independent Warehouses, Inc.

FAKE, Chief Judge.

This suit was originally instituted in the Superior Court of New Jersey and removed to this court on the ground of diversity.

The complaint discloses that plaintiff is a municipal corporation. Acting within its governmental authority it enacted a certain ordinance prohibiting the carrying on of the business of storage of personal property for hire without first obtaining a license so to do. It further provides for the charge and collection of an annual fee of ¾ of 1¢ per square foot of the ground area so utilized. During the years 1943, 1944, 1945 and 1946 the defendants engaged in the business above mentioned and thereby impliedly agreed to pay the fees above mentioned. As a result, the defendants became indebted to plaintiff in the sum of $20,-477.22 per annum, or a total of $81,908.88 with interest. Defendants instituted certiorari proceedings in the New Jersey Supreme Court, in the year 1943, to ascertain the validity of the said ordinance. In these proceedings the defendant, Erie Railroad Company, expressly agreed and promised that if the ordinance was found to be legal it would forthwith pay the plaintiff the annual fee of $20,477.22 per annum. The Court of Errors and Appeals, 130 N.J.L. 217, 32 A.2d 364, determined the ordinance was legal and the Erie R. R. Co., has refused to pay the sum of $81,908.88 alleged to be due.

After removal, and before answer filed, the defendants, Erie R. R. Co. and Independent Warehouses, Inc., move here to dismiss the complaint on two grounds, (1) because this court lacks jurisdiction over the subject matter, and (2) because the complaint fails to state a claim upon which relief can be granted, and for the like rea-

sons seek summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A.

As bearing on jurisdiction, a long affidavit is filed annexing thereto lengthy transcripts of records of proceedings in the State Courts and deposing among other things that on April 9, 1948, while before Justices Bodine, Heher and Wachenfeld in the certiorari proceeding, the Court stated, "that it would not sustain the summonses and complaints and suggested that a stipulation be entered into for the purpose of settling the controversy," and as a result of that suggestion, made in open court, the Hon. Ralph Chandless, of counsel for plaintiff, and Duane Minard, Esq., representing the Railroad and the Coal Co., and Edward Markley, Esq., representing the Warehouse Company, entered into a stipulation, with the signed approval of the said justices, and the same was filed with the Clerk. A copy thereof is annexed to the affidavit and made a part thereof.

Referring now to the stipulation, it appears (1) that the parties agreed to and did discontinue the proceedings under the writs in the State Court, (2) the Warehouse Co. agreed to submit to plaintiff, within sixty days, returns setting forth the areas of ground space used for storage pursuant to the ordinance and diagrams indicating the same; (3) on the coming in of said data, if found accurate by plaintiff, notice was to be given defendants and one or more of them would pay the amounts thus found due within sixty days; (4) in the event of a dispute by plaintiff as to the accuracy of the diagrams, the "dispute shall be referred to an arbitrator to be selected by the Justices of Part III of the January Term 1948 of the Supreme Court, who shall proceed to determine the areas * * * which determination shall be final and binding in accordance with the practice of the Supreme Court of New Jersey." This exhibit is signed by the attorneys for all parties in interest including the plaintiff here, and is also signed for the Court by Justices Bodine and Heher. Then follows exhibit "B" of the affidavit being a copy of the report made by the Warehouse Co. as to areas, diagrams and calculations in money. Showing an amount of $9,353.81 due as opposed to the figure of $81,908.88 set forth in the complaint herein. The report cites the stipulation as its reason for report and offers the sum of $9,353.81 in settlement, "without prejudice, however, and subject to the express condition that if said offer is not accepted in writing by said Township within thirty days from submission," and "reserves the right, in any further litigation or arbitration, to interpose any and all legal defenses * * *."

Then follows Exhibit "C" of the affidavit, being a letter on the stationery of the attorney for the Township, signed for the Township by Ernest Weller, Township Attorney, addressed to the defendants herein. The gist of it is that the township has authorized the writer, its attorney, to notify the defendants "in writing * * * pursuant to paragraph 4 of the stipulation of April 9, 1948, that they dispute the accuracy of said return and diagram, and that they are requesting a reference to an arbitrator pursuant to the stipulation * * * for the purpose of determining the areas * * *."

Then follows Exhibit "D" of the affidavit, being a copy of a long letter or petition addressed to the State Judges by Mr. Edward A. Markley. This document recites the arbitration agreement, the rejection above noted and other documents, letters and facts; notifies the Court of the failure to agree and asks for an appointment with the Court and counsel for the purpose of having the Court appoint an arbitrator in conformity with the stipulation. A copy of this was sent to plaintiff's attorney. He replied thereto, in a lengthy letter addressed to Mr. Justice Heher of the State Court, advising the Justice that the plaintiff municipality insists on its right to enforce the ordinance, "and that in view of their responsibility to the public, no one, except themselves, was, is or will be authorized to waive enforcement." It further states, "that they must insist that the terms of any settlement agreement will not be binding on the Township until the same is first officially approved by its governing body in writing."

Then follows a letter from Mr. Markley, in which he quotes a letter from Mr. Justice Bodine as follows: "After considering Mr. Markley's letter of November 4, and Mr. Weller's letter of November 8th Justices Heher, Wachenfeld and myself have concluded that there is nothing we can do in the premises. We therefore, suggest that you take such steps as you may be advised."

This seems to have held up proceedings toward the consummation of the stipulation or arbitration agreement. Whether it is upon the ground that the plaintiff municipality could not be bound in that manner, or upon one or more of the other grounds raised does not appear. Thereafter the suit now before this court was instituted to enforce the ordinance and later removed here.

To the foregoing affidavits, plaintiff's counsel has submitted a lengthy affidavit with exhibits annexed. There is much in this record wherein the affidavits are in conflict. For example, this affidavit denies the alleged remarks of the State Judges bearing upon process; it denies the interpretations placed upon certain exhibits based upon conflicting allegations of fact, and on the whole leaves many major factors in conflict or clouded in uncertainty.

It will be remembered that at the oral argument here I called attention of counsel to the now limited extent to which affidavits may be used effectively on motions for summary judgment in this court, Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 169 F.2d 580. Since then a decision has come down from our Circuit further clarifying the subject.

■ At the time of the argument here, an opinion of mine, in Reynolds Metals Co. v. Metals Disintegrating Co., D.C., 8 F.R.D. 349, was pending on appeal at the Circuit on the subject of the speaking motion. There can be no doubt that the motions here, insofar as they are directed to the sufficiency of the complaint, fall well within the sphere of the speaking motion. I will quote from the opinion of the Court of Appeals, in the Reynolds case, 3 Cir., 176 F.2d 90: "The comments of the learned district judge directed to the advantages of permitting a 'speaking motion,' whereby a litigant might obtain the involuntary deletion of an allegation by his opponent through the medium of a motion reinforced by affidavits, merit an answer by us. He has ably presented the view contrary to that which we recognized as correct in the Frederick Hart case, supra, and to which we adhere. It seems to us that the Federal Rules of Civil Procedure, 28 U.S.C.A., were designed to facilitate correlation, and not duplication, between the pre-trial and trial proceedings. If the truth or falsity of allegations in pleadings may be adjudicated in advance of a trial through the technique of filing affidavits, it is to be expected that eventually the courts will have to develop pre-pre-trial procedures; for pre-trial proceedings such as those favored by the court below are likely to inspire all too many carefully-drafted written statements escaping the clarifying processes of cross-examination and delaying prompt disposition of cases. We are satisfied that pre-trial proceedings are intended to determine what the issues are, and not to invade the trial function of resolving these issues. The rule limiting the scope of motions to strike pleadings as sham, as exemplified in Bates v. Clark, 1877, 95 U.S. 204, 205-206, 24 L.Ed. 471, is, we think, a salutory one which Rule 11 of the Federal Rules of Civil Procedure reflected rather than altered. Consequently, we reiterate the position we expressed in the Frederick Hart opinion. See Andrews v. Heinzman, D.C.Neb.1949, 9 F.R.D. 7, 9."

■ Thus it will be seen that much if not all of the matters and things now before this court upon affidavits cannot be considered, and defendants must be put to the filing of answers. This would also have been the effect under the old practice where affidavits are in conflict.

Upon answers filed, issue will be joined and the case will be placed on the pre-trial calendar for the purpose of shortening and clarifying the issues. The affidavits here extend well beyond the limitations of judicial notice in the federal courts. Therefore the pertinent factors cannot be considered as on demurrer or motion in the

absence of affidavits. It is suggested that before counsel move further in this case they give careful study to the Hart case, and the Reynolds case, above cited, together with each of the citations mentioned therein. In the light thereof, it is the duty of this court to deny the motions addressed to the sufficiency of the complaint.

As to the motion to quash the service of process made by the defendant, Independent Warehouses, Inc.: It is my thought that the restricted use of affidavits above mentioned does not apply to this motion. The removal brings the process here together with all that pertains to its sufficiency.

It appears that on the 30th day of October, 1947 the defendant, Independent Warehouses Co., Inc., filed a certificate of surrender and withdrawal from the transaction of business in New Jersey, and the registered agent, upon whom process might be served, had resigned as such agent on October 10, 1947. It is noted that these things took place after the accrual of the causes of action set forth in the complaint herein, and no one has been specially designated upon whom process could be served. Service in the instant suit was made upon the former designated agent on January 28, 1949, upwards of a year after the withdrawal and resignation above mentioned.

Looking at the statutory law of the State bearing upon the sufficiency of this service we find N.J.S.A. 14:15–3. This provides that "Every foreign corporation * * * before transacting any business in this state, shall file in the office of the secretary of state a copy of its charter * * * and a statement * * * setting forth: (c) The principal office of the corporation in this state and the name and place of abode of an agent upon whom process against such corporation may be served * * * and the agency shall continue until the substitution, by writing, of another agent." The meaning and intent of this statutory language is considered by the late Vice Chancellor Garrison in an exhaustive, scholarly opinion wherein he holds that service in line with the service here was good, Groel v. United Electric Co. of New Jersey, 1905, 69 N.J.Eq. 397, 60 A. 822. The only real difference between the Groel case and this case is found in the fact that in the Groel case the agency had been revoked, while here we have a resignation. In that case, as in this, withdrawal proceedings had been consummated. Cited against this is the per curiam opinion in the New Jersey Supreme Court in Applebaum v. Bachrach, 1929, 148 A. 166, 8 Misc. 18. In this per curiam opinion the language of the Act above quoted is not considered. An examination into the record on which that case is founded will disclose that the corporation involved had not withdrawn from the State and was still operating here at the time defective service was made. This clearly differentiates the instant case. Service in the event of continuance of activities in this State is provided for in N.J.S.A. 2:26–47 upon the Secretary of State. I, therefore, conclude that the Applebaum case is not in point.

The motion to strike the complaint, and the motions to quash service and enter summary judgment, are each denied.