Bettie **MURPHY** and Lloyd Murphy, her husband, and Lloyd Murphy, in his own right, Plaintiffs,

v.

**HELENA RUBINSTEIN COMPANY**, a corporation of the State of New York, and **H. J. Titus, Inc.**, a corporation of the State of New York, jointly, severally and/or in the alternative, Defendants.

Civ. A. No. 336–63.

United States District Court
D. New Jersey.

Oct. 29, 1964.

Arthur E. Ballen, Camden, N. J., for plaintiffs.

McCord, Farrell & Eynon, by Sidney P. McCord, Jr., Haddonfield, N. J., for defendants.

COHEN, District Judge.

Defendants move to quash service of process or to vacate default judgments entered in this Court on non-jury verdicts assessing damages in favor of the plaintiffs Bettie Murphy in the sum of $7,-000.00 and Lloyd Murphy, her husband, for $1,500.00 against both defendant-foreign corporations, chartered and functioning in the State of New York. The causes of action arose out of asserted "products liability." Under attack is the

validity of the service of process triggered by the attachment, in attempted satisfaction of plaintiffs' judgments, of the defendants' bank account at Bankers Trust Co., New York City.

A brief statement of the sequence of events is imperative in order to bring into focus the relative positions of the parties. In an effort to prosecute the plaintiffs' claims, information was secured in response to inquiry made of the Office of the Secretary of State of New Jersey by plaintiffs' attorney concerning a corporate cosmetic manufacturer trading as "Helena Rubinstein" (incorrectly captioned in the pleadings "Helena Rubenstein."). On April 23, 1963 the Office of the Secretary of State replied that "Helena Rubinstein, Inc." was a New York corporation authorized to transact business in New Jersey, and that on March 31, 1960 it had changed its name to "H. J. Titus, Inc.," listing its registered agent as Mary O. Seeley, 951 Broad Street, Newark, New Jersey. Complaint and demand for jury trial were filed in this Court on April 29, 1963. The United States Marshal was instructed to make service upon defendants by serving the aforesaid agent. On May 3, 1963 the Marshal advised plaintiffs' attorney by letter that he was unable to effect service as the building at 951 Broad Street, Newark, New Jersey, had been torn down several months prior, and that his inquiry of the Postal Department disclosed no change of address. The Marshal was then instructed to make service upon the Secretary of State at Trenton, New Jersey, which was done, and by letter dated May 23, 1963 the Secretary of State advised that the complaint and summons were forwarded to Mary O. Seeley, the last known registered agent of "H. J. Titus, Inc.," at the Newark address, which envelope was returned as "undeliverable" at that address. On July 11, 1963 plaintiffs made application, with supporting affidavit, for the Entry of Default. The matter was set down for the taking of testimony before the Court on March 3, 1964 for the assessment of damages. Judgments totaling $8,500.00 were entered against defendants. Finding no assets within the State of New Jersey, plaintiffs attempted to levy on a bank account of defendant, Helena Rubinstein, Inc., in New York State. There followed then the appearance of local counsel and the present motion.

While plaintiffs' brief does not disclose when inquiry was made, whether before or after suit, it does relate that the records of the Office of Secretary of State of New Jersey (and presumably New York) disclose the interplay of two corporations, at one time or another, known as "Helena Rubinstein, Inc." One, a corporation chartered in New York State on September 9, 1926 named "Helena Rubinstein, Inc." It was authorized by certificate on August 10, 1928 to transact business in New Jersey. On December 11, 1928 the corporate name was changed to "H. J. Titus, Inc." Thereafter, on October 6, 1942 this corporation was dissolved in New York, but no notification of either the prior change of name or of the dissolution was filed in New Jersey. However, on March 31, 1960 the prior change of name to "H. J. Titus, Inc." was filed with the Secretary of State of New Jersey. The other, a second corporation was chartered in New York, under the name of "Helena Rubinstein, Inc.," on December 11, 1928, being the same date when the first Rubinstein corporation changed its name to "H. J. Titus, Inc." On February 5, 1929 this later corporation received a certificate authorizing it to do business in the State of New Jersey. Thereafter, on February 25, 1947 this corporation, the "Helena Rubinstein, Inc.," secured a certificate of withdrawal from the Secretary of the State of New Jersey.

The foregoing narrative, while not asserted by way of affidavit in lieu of testimony on motion, will be considered by the Court as a reasonably accurate factual statement to assist in dispelling some of the confusion surrounding the corporate status in New Jersey of the defendants at the time that suit was commenced and service of process sought to be effected. It seems clear, according to

the corporation records of the New Jersey Secretary of State, that "H. J. Titus, Inc.," a New York corporation, was the original Helena Rubinstein, Inc., and conceivably the party sought by plaintiffs for purposes of suit. When process was returned "*non est*" by the U. S. Marshal, and renewed attempt made by service upon the Secretary of State of New Jersey failed as well to reach the defendants, then it was quite evident that the corporation records on file for H. J. Titus, Inc. (formerly Helena Rubinstein, Inc.) were incomplete and lacked current status. Despite the renown of Helena Rubinstein, Inc., operating in domestic and foreign consumer retail markets, plaintiffs elected to rely upon these futile attempts, well knowing that these statutory devices did not result in actual notice to the defendants in New York, or in constructive notice by service upon a representative in New Jersey, of whom it might reasonably be expected that notice to defendants would follow in the ordinary course, as contemplated by the legislative enactment.

█ Plaintiffs misconstrued the purpose of R.S. 2A:15–26, N.J.S.A. They elected to treat the statute as providing a means of effecting valid service of process in an *in personam* civil action, as if it were an *in rem* proceeding. Whether the defendants received in fact notice of the suit was apparently of no concern. That the Secretary of State of New Jersey was unable to notify the corporation effectively by letter was of no moment, and of no consequence. The statute purports to afford a plaintiff an avenue for suit in New Jersey against a foreign corporation where, through circumstances beyond control, a suitor would otherwise be unable to reach such corporation in a jurisdictional sense. But if the use of this particular statute does not in reality result in the receipt of notice of the action, especially in an instance where plaintiff knows, or ought to know, that such reliance aborts procedural rule process and misses its mark, then something more remains to be done. That something more, while it need not amount to

compulsory and extensive inquiry and affidavit thereof, certainly suggests by the tenor of the statute in question, as well as traditional concepts of procedural due process, that reasonable effort be made by plaintiff to bring the proceeding to the attention of the party sued. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Also cf. Finkle v. Cumberland County Realty Co., 69 N.J.Super. 85, 173 A.2d 570 (Chanc.Div.1961).

R.S. 2A:15–26, N.J.S.A. evinces a general legislative design to protect New Jersey resident-plaintiffs against foreign corporations which transact business within New Jersey and which seek to evade service of process by failure to comply with the statutes governing corporations, both domestic and foreign, or which neglect to so comply because of fortuitous circumstances, as in the instant case. Plaintiffs seek the benefit of the statute in question in order to legally reach the defendant-foreign corporations, but they refuse or neglect to go so far as to notify the defendants at their situs in New York, well knowing that the Secretary of State was unable to do so, or at least did not do so. Such *naïveté* of the plaintiffs' reliance upon token compliance with the statute is at best a halfhearted compliance which would permit unconscionable advantage, abuse the purpose of the statute, and do violence to procedural due process. Saddle River Twp. v. Erie R. Co., 9 F.R.D. 252 (D.C. N.J.1949), relied upon by plaintiffs, is distinguishable. There the cause of action arose before corporate withdrawal; service was in fact effected upon the last known registered agent, although he had resigned prior thereto; defendant corporation did receive actual notice of the complaint, appeared before answer, and sought to have the complaint dismissed. Judge Fake found a compliance with R.S. 14:15–3, N.J.S.A. on the basis of ostensible or continuing agency.

█ The present impasse is attributable to the neglect of the defendants in failing to rectify their corporate records so as to reflect their actual status within

the State of New Jersey, as well as to the neglect of the plaintiffs in failing to make a more reasonable effort to effect notice upon the defendants of the pending action, thus affording them an opportunity to be heard upon the merits. Procedural due process is a two-edged sword designed to bring the contest within the forum so that the adverse parties may both be heard. International Shoe, supra.

■ Moreover, the plaintiffs' post judgment conduct amply demonstrates the relatively simple manner in which defendants could have been notified of this suit. Plaintiffs had no difficulty in reaching the defendants in New York City when they sought to perfect their judgments by collection. It should be noted that after the entry of judgment on March 3, 1964 plaintiffs had costs taxed on March 9, 1964, waited for the expiration of the time for appeal, and on May 11, 1964 secured an affidavit certifying that no appeal had been filed. On June 24, 1964 plaintiffs levied on the bank account of Helena Rubinstein, Inc., in New York City. If equal diligence had been pursued initially to bring notice of the suit to the defendants in New York, the present situation would not exist. It is perhaps more fair to conclude that the intense preoccupation of plaintiffs' counsel with the prosecution of claims against a foreign corporation, as well as his understandable mistake in believing that he was complying with the legal requirements regarding effective service of process, prompted the strict adherence to what appears to be the letter of the law. But the fact remains that the present positions of the parties are unjust. The demands of due process required by the *Fourteenth Amendment* are such as accord with traditional concepts of fair play, substantial justice, and a resolution of controversy upon the merits. These are the very pillars of Anglo-Saxon law. It is to this end that minimal procedural due process requirements must be met, not only in subjecting a party to suit, but as well and with like equality of treatment before the law, affording such party an opportunity to defend. But defense of such an action by its very terms implies adequate notice. Consequently, procedural due process requires adequate notice. International Shoe v. State of Washington, supra. No such notice, either actual or constructive, effectively reached the defendants. Hence, the attempted service of process failed both in fact and in law. In Tarbox v. Walters, 192 F.Supp. 816 (E.D.Penna.1961), the Court held that service of process in the Federal Court under Rule 4, Fed.R.Civ. Proced. permits service as provided in the state where service is sought to be made. Process had been left at the office of defendant's employer, where he stopped only 2 or 3 times a year, he being a traveling salesman. This attempted service of process was held insufficient as not reasonably calculated to *bring notice* of the suit to defendant and acquaint him with his duty and right to defend. The court held that the attempted service was a compliance with the Pennsylvania Rules of Civil Procedure, but only a token and ineffectual compliance, and hence insufficient. See also, Grooms v. Greyhound Corp., 287 F.2d 95 (6 Cir. 1961).

Therefore, under the circumstances here presented and in order to do substantial justice between the parties, and for the other reasons herein assigned, it is the determination of this Court in the exercise of its permissive judicial discretion that the judgments against the defendants, as well as the supplementary proceedings taken pursuant thereto, be and the same are hereby vacated and rendered nugatory. General Telephone Corp. v. General Telephone Answering Service, 277 F.2d 919 (5 Cir. 1960).

And it is further determined and ordered that the motion to quash service of process is hereby denied. The attempted service of process may be perfected by formalizing the entry of appearance on behalf of defendants, in proper corporate name, consent to which has been indicated by defense counsel. Answer may be filed as provided by the Federal Rules of Civil Procedure, the

time therefor being computed from the date of the filing of an order in accordance herewith.

Upon oral argument plaintiffs' counsel urged that in the event defendants prevail, he should be reimbursed for his expenses in obtaining two expert medical witnesses at the first trial and be awarded a reasonable counsel fee, totaling $400.00. Fairness dictates that the parties be restored to their original positions and the plaintiffs made whole. Such request seems reasonable and proper and an award of $400.00 to plaintiffs' counsel is hereby ordered.

Counsel for defendants shall submit an order, with consent of counsel or upon notice, in conformity with the views herein expressed.