Ricky SIEG and Jennifer
Sieg, Respondents,

v.

INTERNATIONAL ENVIRONMENTAL
MANAGEMENT, INC., Appellant.

No. WD 74100.

Missouri Court of Appeals,
Western District.

June 19, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 31, 2012.

Application for Transfer Denied
Sept. 25, 2012.

---

R.L. Veit, Mark A. Ludwig, and Ryan J. McDaniels, Jefferson City, MO, for Respondents.

Russell F. Watters, Timothy J. Wolf, Patrick A. Bousquet, and Patrick T. Cody, St. Louis, MO, Edward D. Robertson, Jr., Jefferson City, MO, for Appellant.

Before Division Two: MARK D. PFEIFFER, Presiding Judge, and KAREN KING MITCHELL and GARY D. WITT, Judges.

KAREN KING MITCHELL, Judge.

This is a service of process case. The first issue is whether, under Missouri law, service upon the registered agent of a foreign corporation was valid when the corporation (1) had been administratively dissolved by the Secretary of State; (2) had a second certificate of authority issued from the Secretary of State, listing the agent who was served as the registered agent; (3) had been administratively dissolved with respect to the second certificate of authority; (4) had updated the first certificate of authority, but not the second, by listing a new registered agent; and (5) had not statutorily revoked or changed the authority of the agent who was served. The second issue is, if such service was valid under Missouri law, whether the relevant Missouri rules and statutes, in allowing service in this manner, violate the Due Process clause of the Fourteenth Amendment. We hold that service was valid and that such service does not violate due process. Accordingly, we affirm.

## Facts and Procedural Background

On August 19, 1996, Missouri's Secretary of State issued a certificate of authority for Appellant International Environmental Management, Inc. ("IEM") to do business in this state. The certificate identified IEM by the number 00430217 ("the first certificate of authority"). At that time, IEM's registered agent was The Corporation Company. On August 31, 1998, the Secretary of State "administratively dissolved" IEM for failure to file an annual report. On November 9, 2000, IEM filed, with the Secretary of State, a document changing its registered agent from The Corporation Company to John S. Pletz.

On June 19, 2006, Respondent Ricky Sieg was injured in Missouri by a trash compactor that was allegedly manufactured, installed, and maintained by IEM.

Four days later, on June 23, 2006, IEM applied with the Secretary of State for a second certificate of authority. The application named United Corporate Services, Inc. ("UCS") as IEM's registered agent. That same day, the Secretary of State issued a certificate of authority for IEM to do business in Missouri ("the second certificate of authority"). The second certificate

of authority identified IEM by number 747488. In 2006, UCS, in its capacity as IEM's registered agent, filed with the Secretary of State two separate change of address forms, both identifying IEM by the number associated with the second certificate of authority. On January 26, 2007, the Secretary of State administratively dissolved IEM (for failure to file an annual report), identifying it by the number associated with the second certificate of authority.

On August 29, 2007, UCS, in its capacity as IEM's registered agent, filed with the Secretary of State a change of address form, identifying IEM by the number associated with the second certificate of authority.

On November 5, 2007, CT Corporation System ("CT Corporation") filed, with the Secretary of State, a change of registered agent form, identifying IEM by the number associated with the first certificate of authority, and changing IEM's registered agent on the first certificate from John S. Pletz to CT Corporation. However, CT Corporation filed nothing with respect to the second certificate of authority.

On August 20, 2009, Sieg and his wife, Respondent Jennifer Sieg, filed a lawsuit against IEM. On August 24, 2009, a process server served UCS with the summons and the petition. Since its last contact with UCS, IEM had changed both its physical address and its email address. Accordingly, UCS did not forward the summons and the petition to IEM's correct address. IEM does not argue that UCS put the Siegs on notice that (1) it had forwarded the summons and the petition to the wrong address; or (2) IEM may have attempted to revoke UCS's authority to accept service.

IEM did not plead, nor did it otherwise defend, and the circuit court accordingly entered an interlocutory order of default.

The court then held a hearing to determine damages, and, on March 18, 2010, it entered a default judgment in the amount of $9,229,360.35 for Sieg and $500,000 for Jennifer Sieg.

On March 18, 2011, the Siegs' attorney sent IEM a letter, addressed to its corporate headquarters in Georgia, stating that he intended to execute the judgment. On April 15, 2011, IEM filed a Motion for Relief From Void judgment, arguing that the Siegs had not achieved valid service of process in the lawsuit that led to the default judgment and that its right to due process had been violated. The circuit court held hearings on the motion and ultimately entered a judgment denying it. IEM appeals.

## Standard of Review

■ Ordinarily, we review the circuit court's ruling on a motion to set aside a judgment under Rule 74.06 for an abuse of discretion. However, whether a judgment should be vacated because it is void is a question of law that we review *de novo;* we give no deference to the circuit court's decision.

*Kerth v. Polestar Entm't,* 325 S.W.3d 373, 378 (Mo.App. E.D.2010) (internal citations omitted). De novo review means that we will apply the same standard that applied below. *Am. Nat'l Prop. & Cas. Co. v. Ensz & Jester, P.C.,* 358 S.W.3d 75, 80 (Mo.App. W.D.2011).

■ Courts favor finality of judgments, so the concept of a void judgment is narrowly restricted. *Forsyth Fin. Grp., LLC v. Hayes,* 351 S.W.3d 738, 740 (Mo. App. W.D.2011). A judgment is void under Rule 74.06(b)(4) only if the circuit court that rendered it (1) lacked subject matter jurisdiction; (2) lacked personal jurisdiction; or (3) entered the judgment in a manner that violated due process. *Id.*

"Valid service of process is a prerequisite to personal jurisdiction, and failure to comply with statutory requirements of process deprives the court of authority to adjudicate." *Maddox v. State Auto. Mut. Ins. Co.,* 356 S.W.3d 231, 234 (Mo.App. E.D. 2011). Accordingly, a judgment is void if it was rendered against a defendant who had not been served. *Id.*

## Analysis

### I. Whether the Siegs' service of IEM complied with Missouri law

IEM argues that service of process was invalid in that, under section 351.594,[1] service cannot be made on a foreign corporation's registered agent once the foreign corporation is no longer authorized to do business in Missouri; IEM argues in the alternative that, once a foreign corporation is no longer authorized to do business in Missouri, service can be made only on the foreign corporation's *last appointed* registered agent, and CT Corporation, not UCS, was the last appointed registered agent. We disagree.

### a. The administrative dissolution of IEM did not automatically revoke its registered agent's authority to accept service of process.

"Personal service within the state shall be made as follows: ... Upon a ... foreign corporation ... by delivering copies [of the summons and the petition] to its registered agent...." Rule 54.13(b)(3). "Revocation of a foreign corporation's certificate of authority does not terminate the authority of the registered agent of the corporation." § 351.602.5.

Section 351.594 provides as follows:

1. The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process ...

2. A foreign corporation *may* be served by registered or certified mail, return receipt requested, addressed to the secretary of the foreign corporation at its principal office shown in its application for a certificate of authority or in its most recent corporate registration report, if the foreign corporation:

. . .

(3) Has had its certificate of authority revoked under section 351.602.

If the corporation has no secretary or if the secretary cannot, after the exercise of reasonable diligence, be served, then service on the corporation may be obtained by registered or certified mail, return receipt requested, addressed to any person designated as a director or officer of the corporation at any place of business of the corporation, or at the residence of or any usual business address of such director or officer.

. . .

4. *This section does not prescribe the only means, or necessarily the required means, of serving a foreign corporation.*

(Emphasis added.)

When construing statutes and Supreme Court Rules together, we apply the ordinary rules of construction, beginning with the principle that the relevant language should be given its plain and ordinary meaning. *Hanks v. Rees,* 943 S.W.2d 1, 4 (Mo.App. S.D.1997). To the extent there is any apparent discrepancy between a statute and a Supreme Court Rule, we attempt to harmonize their provisions. *Ford Motor Credit Co. v. Updegraff,* 218 S.W.3d 617, 623 (Mo.App. W.D.2007). When the words used by the Supreme Court and the General Assembly are clear and unambiguous, no resort to the canons

1. Statutory citations are to RSMo 2000, as updated by the 2011 cumulative supplement.

of construction is necessary. *Scoggins v. Timmerman*, 886 S.W.2d 135, 137 (Mo. App. W.D.1994).

■ Here, the relevant language provides, in clear and unambiguous terms, that (1) a plaintiff may serve a foreign corporation by delivering copies of the summons and the petition to the corporation's registered agent, Rule 54.13(b)(3); § 351.594.1; and (2) revocation of the foreign corporation's certificate of authority[2] does not terminate the agent's authority. § 351.602.5. Thus, under the plain language of Rule 54.13(b)(3) and sections 351.594.1 and 351.602.5, a registered agent retains its authority to accept process on behalf of a foreign corporation even after the Secretary of State has administratively dissolved the corporation.

■ IEM argues that section 351.594.2 more specifically addresses the facts at issue here and that section 351.594.2 should therefore apply to the exclusion of Rule 54.13(b)(3), which, unlike section 351.594.2, does not mention service on a foreign corporation whose certificate of authority has been revoked. We disagree. By the clear terms of section 351.594, the methods of service that it makes available are *alternative* means of service. Subsection two states that service *may* be accomplished by the methods it enumerates, not that service *shall be* so accomplished. Subsection four then specifically states that "[t]his section does not prescribe the only means, or necessarily the required means, of serving a foreign corporation." As discussed above, Rule 54.13(b)(3) pro-

vides an alternative means of serving a foreign corporation, and, when read in conjunction with section 351.602.5, the rule unambiguously allows for service on a registered agent, even when the foreign corporation has been administratively dissolved.

■ IEM counters that section 351.602.5 provides only that a registered agent's *authority* does not expire upon administrative dissolution and that *authority* in this context is not meant to include the authority to accept service of process. We disagree. The primary purpose of a registered agent is to accept, on behalf of its client, service of process and other notices. " 'The scope of [a registered agent's] agency is to receive and transmit notices and process. It does not transact any of the usual or customary business of its clients.' " *State ex rel. McDonald's Corp. v. Midkiff*, 226 S.W.3d 119, 125 (Mo. banc 2007) (quoting *State ex rel. Whaley v. Gaertner*, 605 S.W.2d 506, 507 (Mo.App. E.D.1980)). The legislature is well aware of the purpose of a registered agent, and, if it had intended the term "authority" to exclude the *primary authority* of a registered agent, it would have so specified. Considering that registered agents exist primarily to receive service of process, it would be absurd to construe the "authority" of a registered agent to exclude that authority. We do not construe statutes in a manner that yields absurd results. *Reichert v. Bd. of Educ. of City of St. Louis*, 217 S.W.3d 301, 305 (Mo. banc 2007).

2. The parties assume without analyzing that, when the Secretary of State "administratively dissolved" IEM, it was revoking its certificate of authority pursuant to section 351.598 and section 351.602. We agree with that assumption and note that section 351.602.2 requires the Secretary of State to "file the original of the certificate [of revocation]." The Secretary of State's notice of administrative dissolution for IEM is, in fact, titled "Administrative Dissolution or Revocation for a For-Profit Corporation," and it states that IEM "stands administratively dissolved or revoked under the provisions of ... Section 351.602." We will thus use the phrases "administrative dissolution" and "revocation of certificate of authority" interchangeably.

■ IEM also contends that reading Rule 54.13(b)(3) and section 351.602.5 in this manner runs counter to the common law rule that the death of a principal automatically terminates the authority of its agent. *See Wood v. Hudson,* 823 S.W.2d 158, 160 (Mo.App. E.D.1992). The argument fails for three reasons. First, the rules of the Supreme Court and the statutes enacted by the legislature can supersede the common law. *See, e.g., Edwards v. Gerstein,* 237 S.W.3d 580, 582 (Mo. banc 2007) (noting that the legislature superseded the common law regarding sovereign immunity). Second, IEM is not dead (or dissolved): it just was not authorized to do business in Missouri at the time the Siegs served its agent.[3] The general rule under those facts is as follows:

> By the great weight of authority, if a statute requires as a condition precedent to the doing of business in the state by a foreign corporation that it shall designate an agent in the state upon whom process may be served in actions against it, the withdrawal of the corporation from the state does not revoke the authority of the agent to receive service.

*Cessation by foreign corporation of business within state as affecting designation of agent for service of process,* 45 A.L.R. 1447, 1447 (1926). Third, the rule relied upon by IEM, when applied to corporations, is not the law in Missouri, *Sherman, Taff & Bangert, P.C. v. Clark Equip. Co.,* 133 S.W.3d 125, 127 (Mo.App. W.D.2004) (holding that corporation had a duty to notify third parties about the termination of its agent's authority even when the company dissolved and reorganized under a new name); nor is it the currently favored rule elsewhere. *See* RESTATEMENT (THIRD) OF AGENCY, § 3.11 cmt. b (2006) ("A principal's death or loss of capacity does not by itself or automatically end the agent's apparent authority. This is contrary to the position taken in Restatement Second, Agency § 120, Comment c").

Further, IEM argues that section 506.150.1(4) evidences the legislature's intent to disallow service upon the registered agent of a foreign corporation once the corporation has been administratively dissolved. That section provides that "[s]ervice shall be made as follows: ... (4) Upon a *domestic* corporation that has been dissolved according to law, by delivering a copy of the summons and of the petition to the last registered agent of the corporation or upon the secretary of state." § 506.150.1(4) (emphasis added). IEM reasons that (1) if the legislature had intended for *both* domestic and foreign corporations to be served in this way, it could easily have so provided; and (2) we should therefore conclude that, by not including foreign corporations in this section, the legislature meant to exclude them from such service.

■ IEM is apparently invoking the rule of construction that calls for an omission to be read as an exclusion (or "expressio unius est exclusio alterius"). But that rule should be invoked with great caution, and "only when it would be natural to assume by a strong contrast that that which is omitted must have been intended for the opposite treatment." *Six Flags Theme Parks, Inc. v. Dir. of Revenue,* 179 S.W.3d 266, 269–70 (Mo. banc 2005). As noted above, this is not even a case that calls for statutory construction, because the language "[r]evocation of a foreign corporation's certificate of authority does not terminate the authority of the registered agent of the corporation" is unambiguous. § 351.602.5. However, even if

---

**3.** "A corporation administratively dissolved continues its corporate existence but may not carry on any business" subject to certain exceptions. § 351.486.3.

the canons of construction were necessary, this would not be a case where a strong contrast implied that the thing omitted should receive opposite treatment from the thing included: there is no great difference between administratively dissolved *foreign* corporations and administratively dissolved *domestic* corporations as to necessarily suggest that one receive the opposite treatment vis-a-vis registered agents.[4] Moreover, allowing domestic corporations to be served, post-dissolution, on their registered agents, but disallowing such service on foreign corporations, would be to confer a benefit on foreign corporations that does not apply to Missouri corporations. Section 351.582.2 strongly suggests that the legislature did not intend to do that:

> A foreign corporation with a valid certificate of authority has the same *but no greater rights* and has the same *but no greater privileges* as, and except as otherwise provided by this chapter, is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.

(Emphasis added.) Accordingly, we hold that, by allowing post-dissolution service on a domestic corporation's registered agent, section 506.150.1(4) does not implicitly disallow such service on a foreign corporation.

4. IEM argues that a dissolved domestic corporation is more likely to maintain contact with its registered agent in the state, but we see no reason why that would necessarily be true, and, even if it were, it would not, by itself, create the contrast sufficient to infer, solely on the basis that section 506.150.1(4) mentions domestic corporations and not foreign corporations, that foreign corporations should receive the opposite treatment from that provided in section 506.150.1(4).

5. We note that IEM knew how to comply with section 351.588: it changed its registered

Finally, IEM argues that applying Rule 54.13(b)(3) and section 351.602.5 in this manner is against public policy in that a registered agent, once designated, would have perpetual authority to accept service of process on behalf of the corporation. We disagree. If post-dissolution service on a corporation's registered agent violated public policy, the legislature would not have explicitly endorsed such service on Missouri corporations. *See* § 506.150.1(4). Further, section 351.592 provides a specific procedure for revoking a registered agent's authority, and section 351.588 provides a specific procedure for changing the corporation's registered agent. With respect to the second certificate of authority, IEM neither revoked UCS's authority, nor did it change its registered agent from UCS to CT Corporation.[5] Thus, there was a mechanism to ensure that UCS was not IEM's "perpetual agent," but IEM did not avail itself of that procedure.[6]

When read together, Rule 54.13(b)(3) and section 351.602.5 unambiguously provide that a plaintiff can serve a foreign corporation by delivering copies of the summons and the petition to the corporation's registered agent, and revocation of the corporation's certificate of authority does not terminate the agent's authority to accept service. Therefore, that IEM had been administratively dissolved did not automatically terminate UCS's authority to accept service of process. Point denied.

agent twice with respect to the first certificate of authority and updated its address on the second certificate.

6. We note also that this is not a case where the foreign corporation had been absent from Missouri for so long that any liability it may have incurred while doing business here had become stale. We express no opinion regarding whether, under such facts, the corporation's registered agent could be properly served.

### b. Under the facts of this case, IEM's naming CT Corporation as its registered agent did not revoke UCS's authority to accept service of process.

IEM next argues that, if service upon *any* registered agent could have been proper, it would have been on CT Corporation, because CT Corporation, not UCS, was the *last appointed* registered agent. We disagree.

"Service shall be made ... [u]pon a *domestic* corporation that has been dissolved according to law, by delivering a copy of the summons and of the petition to the *last registered agent.*" § 506.150.1(4) (emphasis added); *see also Mullins v. Central Coal & Coke Co.*, 73 Ark. 333, 84 S.W. 477, 479 (1904) ("[W]e think the authority of the first agent was impliedly revoked by the appointment of the second and the filing of the certificate of such appointment in the office of the Secretary of State."). IEM argues that we should conclude that, like domestic corporations, foreign corporations should be served upon their last registered agent.

■ But we need not decide that issue because the Siegs achieved service in the manner advocated by IEM—by serving *the last registered agent* for IEM's second certificate of authority. Thus, even though the first certificate of authority had been more recently updated,[7] UCS remained the last registered agent for IEM's *most recent certificate of authority.* It is more reasonable, rather than less so, for a plaintiff to serve the registered agent listed on the corporation's most recent certificate of authority, even when a previous certificate of authority had been updated more recently. A contrary rule would encourage corporations to apply for multiple certificates of authority, list multiple registered agents, and update the certificates at different times in an effort to obscure the proper agent to serve. By contrast, serving the last registered agent listed on the most recent certificate of authority is a straightforward procedure that does not permit a corporation to obscure the proper agent for service.[8]

■ Accordingly, we hold that, when a corporation has multiple registered agents, under different certificates of authority, and the agents' authority has neither been statutorily revoked (pursuant to section 351.592) nor transferred to another agent (pursuant to section 351.588), service of process is valid on the last registered agent of the most recently filed certificate of authority.[9] Point denied.

### II. Whether service of process on UCS violated the Due Process clause

IEM argues that, if the Missouri rules and statutes allow for the manner of service in this case, Missouri law violates the Due Process clause of the Fourteenth Amendment of the United States Constitution. We disagree.

---

7. We note that the update to the first certificate of authority was "more recent" by only a little more than two months: CT Corporation filed a document changing IEM's registered agent on November 5, 2007, and UCS filed a document changing its address as IEM's registered agent just over two months prior to that, on August 29, 2007.

8. We note that, while a corporation is not prohibited from filing multiple certificates of authority, the more straightforward procedure under these facts would be to seek reinstatement of the first certificate. *See* § 351.604. Any confusion that results from filing multiple certificates of authority is likely to fall on the corporation.

9. Since CT Corporation (the last registered agent listed on the first certificate of authority and the most recently added agent for either certificate of authority) was not served in this case, we do not decide whether service would *also* have been valid on it.

No "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14, § 1. A corporation has a due process right to notice of a civil lawsuit. *St. Clair v. Cox*, 106 U.S. 350, 356, 1 S.Ct. 354, 27 L.Ed. 222 (1882).

> If a State permits a foreign corporation to do business within her limits, and at the same time provides that in suits against it for business there done, process shall be served upon its agents, the provision is to be deemed a condition of the permission; and *corporations that subsequently do business in the State are to be deemed to assent to such condition as fully as though they had specially authorized their agents to receive service of the process.* Such condition must not, however, encroach upon that principle of natural justice which requires notice of a suit to a party before he can be bound by it. *It must be reasonable, and the service provided for should be only upon such agents as may be properly deemed representatives of the foreign corporation.*

*Id.* (emphasis added). "In determining the constitutionality of a procedure established by the State to provide notice in a particular class of cases, [the court must judge its effect] 'in the light of its practical application to the affairs of men as they are ordinarily conducted.'" *Greene v. Lindsey*, 456 U.S. 444, 451, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982) (quoting *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283, 45 S.Ct. 491, 69 L.Ed. 953 (1925)).

Once a foreign corporation seeks permission to do business in a State, that State may, consistent with due process, provide a mechanism for its residents to serve the corporation within the State even after the corporation has ceased doing business there. *Wash. ex rel. Bond v. Superior Court of Wash.*, 289 U.S. 361, 364, 53 S.Ct. 624, 77 L.Ed. 1256 (1933). It is only when the State-chosen means of service is arbitrary or unreasonable that such service violates due process. *Id.* at 364–65, 53 S.Ct. 624. Due process does not require actual notice in every case; however, notice must be reasonably calculated, under the circumstances, to notify the defendant of the lawsuit and to afford the defendant an opportunity to defend against it. *Jones v. Flowers*, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

Here, it is neither arbitrary nor unreasonable for Missouri to allow service upon a foreign corporation's registered agent after the corporation has been administratively dissolved. Indeed, as noted above, the majority rule is that a registered agent's authority to receive service of process continues after the corporation has withdrawn from the state. *Cessation by foreign corporation of business within state as affecting designation of agent for service of process*, 45 A.L.R. 1447, 1447 (1926). It is not unreasonable for Missouri to give its residents a mechanism by which they can serve, in this state, a foreign corporation formerly authorized to do business here; nor is it unreasonable for Missouri to provide that service can be had upon the corporation's designated agent for service, even when the foreign corporation has withdrawn from the state. *See Wash. ex rel. Bond*, 289 U.S. at 364, 53 S.Ct. 624 ("The provision that the liability thus to be served [in that case, upon a designated agent *or* upon the Secretary of State] should continue after withdrawal from the State afforded a lawful and constitutional protection of persons who had there transacted business with the appellant.").

IEM contends that it was surprised that Missouri allowed for such service, but that contention is belied by its own actions:

*after* the Secretary of State administratively dissolved IEM, IEM twice changed its registered agent pursuant to section 351.588. If IEM had genuinely thought that administrative dissolution ended any chance that its registered agent could be served in Missouri, there would have been no point in effecting a post-dissolution transfer of authority from one registered agent to another. IEM's actions in this regard highlight that it was its own neglect (or CT Corporation's) in not updating its most recent certificate of authority, and not any unreasonableness inherent to Missouri law, that caused its current predicament.

IEM cites *Murphy v. Helena Rubinstein Co.*, where the U.S. District Court for the district of New Jersey concluded that due process was violated. 234 F.Supp. 893, 895 (D.N.J.1964). That case, however, stands for the proposition that a plaintiff's technical compliance with an objectively reasonable notice procedure fails to satisfy due process *when the plaintiff actually knows* that the defendant did not receive notice of the lawsuit. *Id.* ("[P]laintiffs elected to rely upon these futile attempts [at service] *well knowing* that these statutory devices did not result in actual notice to the defendants.") (emphasis added).

In *Murphy,* the plaintiffs attempted to serve the registered agent of a corporation, but they failed. *Id.* at 894. The plaintiffs then served the Secretary of State of New Jersey, who also attempted to serve the registered agent, failed, and informed the plaintiffs that the summons and petition had been returned "undeliverable." *Id.* The plaintiffs had done all that the statute technically required, but the court held that, because the plaintiffs knew, or ought to have known, that the registered agent had not actually been served, the Due Process clause required

"something more ... to be done." *Id.* at 895.

*Murphy* is similar to the more recent *Jones v. Flowers,* where the U.S. Supreme Court held that, in a foreclosure case, when the government receives notice that the defendant did not actually receive notice of the lawsuit, due process requires the government to attempt further reasonable measures of service, provided that such measures are available. 547 U.S. at 229–34, 126 S.Ct. 1708. In that case, the government had sent notice of foreclosure via certified mail; the mail was returned as "unclaimed"; the government published notice of a foreclosure sale in the local newspaper; someone submitted a purchase offer; the government sent another certified letter to the defendant; the second letter was returned as "unclaimed"; and the government then sold the property. *Id.* at 223–24, 126 S.Ct. 1708.

The Court held that the sale violated due process. *Id.* at 234, 126 S.Ct. 1708. Like the court in *Murphy,* 234 F.Supp. at 895, the Court in *Jones* premised its holding on the fact that the plaintiff had actually been informed that the defendant had not received notice of the lawsuit. 547 U.S. at 226–27, 126 S.Ct. 1708 (noting, that, although it had previously held that notice passed constitutional muster if it was reasonable *when sent,* the Court had never addressed the question of whether the plaintiff's *post hoc* knowledge that the notice was ineffective imposed a constitutional requirement to resort to other available measures).

Thus, with respect to the crucial point— that the plaintiff had been informed that service failed to reach the defendant—both *Murphy* and *Jones* stand in marked contrast with this case. Service upon UCS was not returned "unclaimed" or "undeliverable": indeed, it is undisputed that UCS

was properly served.[10] UCS did not forward the summons and petition to IEM's correct address, but there is no evidence in the record that the Siegs had knowledge of UCS's failure to do so.[11] The Siegs complied with a reasonable statutory scheme, and there is no evidence that they knew that such compliance had failed to notify IEM of the lawsuit. Therefore, it cannot be said that the Siegs' service upon UCS was not reasonably calculated to apprise IEM of the pendency of the lawsuit. *See Jones*, 547 U.S. at 226, 126 S.Ct. 1708.

Missouri authorized IEM to do business here *subject to the condition* that it designate an agent (whose authority would not expire upon administrative dissolution) to accept service of process; IEM accepted that condition and, at least in part, acted as if it understood it completely; and the Siegs acted pursuant to the condition, without knowledge that IEM's registered agent forwarded the summons and the petition to the wrong address. Due process requires no more. Point denied.

## Conclusion

Our holding is limited to whether service of IEM was proper under Missouri law, and, if it was proper, whether service in this case complies with the Fourteenth Amendment's guarantee of due process. Stated differently, the question is simply whether a valid judgment *exists*. According to its counsel's statements at the hearing below, IEM has filed a separate action challenging whether, in light of the Due Process clause and/or other law, the judgment can be *enforced*. That issue is not before us, and we therefore do not address it.

We sympathize with IEM, but to hold in its favor would require us to either (1) disregard the plain language of section 351.602.5; or (2) create a due process right to actual knowledge of the pendency of a lawsuit, despite proper service upon a corporation's registered agent. Our duty is to apply the law, not undo it simply because the facts in a particular case give us pause. Accordingly, we affirm.

MARK D. PFEIFFER, Presiding Judge, and GARY D. WITT, Judge, concur.

---

10. The real question in this case is whether UCS was IEM's agent for the purposes of receiving service of process. For the reasons stated above, it was, and, as noted, it is undisputed that UCS was properly served. Thus, despite IEM's lack of actual knowledge, this case is very different from *Murphy* and *Jones*, where *no one* affiliated with the defendant was served at all.

11. The mere fact that IEM did not defend—which would at least suggest that it did not receive actual notice of the lawsuit—is insufficient to establish a due process violation. If the rule were otherwise, a default judgment could never be entered unless it could be established that the defendant actually knew about the lawsuit. That is not the law. *Jones*, 547 U.S. at 226, 126 S.Ct. 1708; *Greene*, 456 U.S. at 449–50, 102 S.Ct. 1874.