Submitted May 8, affirmed July 8, 2015

In the Matter of A. S. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. L.
and J. R. L.,
*Appellants.*

Clackamas County Circuit Court
140858J;
Petition Numbers 140858J01, 140858J02;
A158194

355 P3d 926

Peter Gartlan, Chief Defender, and Shannon Storey, Juvenile Appellate Section Chief Deputy, Office of Public Defense Services, filed the brief for appellant K. L.

Megan L. Jacquot filed the brief for appellant J. R. L.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

Father and mother appeal a judgment in which the juvenile court asserted jurisdiction over their 16-year-old son. The substance of parents' appeal is that the juvenile court erred by entering the jurisdictional judgment because the Department of Human Services (DHS) had not properly served parents with summons, as DHS was required to do for the juvenile court to enter a jurisdictional judgment. DHS responds that parents were properly served under ORS 419B.823, positing that service of summons is adequate under that statute if it meets the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We conclude that parents were properly served with the summons and, consequently, that the juvenile court did not err in entering the jurisdictional judgment.

The relevant facts are procedural and uncontested. DHS filed a dependency petition, in August 2014, that alleged jurisdiction over the child. DHS alleged in the petition that parents were using controlled substances, that they were not providing the child with stable housing, that the child did not live in a safe environment, and that parents were not meeting the child's behavioral needs. Shortly after DHS filed the petition, father agreed to participate in a number of programs designed to improve his parenting skills. The state consequently moved to dismiss the dependency petition, and the juvenile court entered a judgment of dismissal.

DHS subsequently filed a second dependency petition, and the juvenile court held a shelter-care hearing. At that time, Garrett, the DHS caseworker assigned to child's case, submitted an affidavit stating that father was no longer participating in services, that someone had erected barriers to prevent people from reaching parents' home by car, that no one could be found at parents' home, and that someone had placed a handmade sign outside of parents' home stating, "Go Away. You're not Welcome. Bye!!! Be Gone! Keep Out!" DHS had also learned that the child had missed the previous week of school. Based on those and other facts, the juvenile court awarded DHS temporary custody of the child. Hoping to locate the child, DHS sent father an e-mail note

at an e-mail address at which father had previously communicated with Garrett. Father responded to the DHS note with an e-mail note in which he said that he would not make the child available to DHS because "[w]e signed [the child's] custody over to someone else prior to [the shelter-care hearing,] which supersedes your court order."

When DHS was unable to find the child, it asked the juvenile court to issue a warrant under ORS 419B.842[1] for father's arrest.[2] Garrett gave the juvenile court additional information at a hearing on that request. First, she testified that she had not had any communication with parents since receiving father's e-mail note in which father had said that he would not cooperate with DHS. She also testified that there was evidence that parents were hiding the child in Goldendale, Washington—*viz.*, parents had used food stamps in Goldendale and one of the child's friends had told a school teacher that child had sent the friend a text message that said that the child was in Goldendale.

The juvenile court asked at the hearing whether DHS had served parents with summons in the case. DHS responded that it had not done that, which led the juvenile court to conclude that it lacked authority to issue an arrest warrant because father had not "actually been court-ordered *** to do anything." Consequently, the juvenile court agreed to "issue an order directing [father] to appear before this Court with the child" so that if father "does [not] show *** then I will issue a warrant." The juvenile court also directed DHS to send the order "via mail, first class and certified" and to "send a sheriff out [to parents' home] to try to serve personally, and post it on [father's] sign. *** Then if he does [not] appear on the date and time set, we [have] given him the best

---

[1] ORS 419B.842 provides:

"(1) No person required to appear as provided in ORS 419B.812 to 419B.839 shall without reasonable cause fail to appear or, where directed in the summons, to bring the child before the court.

"(2) If the summons cannot be served, if the person to whom the summons is directed fails to obey it or if it appears to the court that the summons will be ineffectual, the court may direct issuance of a warrant of arrest against the person summoned or against the child."

[2] DHS asked the juvenile court to issue an arrest warrant for father only because a warrant for mother's arrest had already been issued in an unrelated criminal case.

notice possible." The juvenile court issued the order, and DHS subsequently submitted a sworn affidavit stating that copies of the order and summons had been mailed to parents.

Parents failed to appear or bring child to court on the day that they had been ordered to appear, and DHS asked the juvenile court to issue a warrant. In support of that request, Garrett testified to the following. Before the hearing, Garrett mailed copies of the order, summons, and dependency petition to parents' home. Garrett also sent father an e-mail note, which she asked father to forward to mother, and which included copies of the order, summons, and petition. Additionally, Garrett went with a deputy sheriff to parents' home and posted copies of the order, summons, and petition on the door of the home. While she was doing that, Garrett saw that there were pets at parents' home, and parents' neighbors told Garrett that they often saw parents visiting their home late at night. The juvenile court concluded that DHS had satisfied the conditions of ORS 419B.842, which allows a court to issue an arrest warrant when a person fails to obey a court summons, and the juvenile court issued a warrant for father's arrest.

The juvenile court held a subsequent hearing that parents did not attend. At that hearing, the juvenile court concluded that it had jurisdiction over the child and that both mother and father had been properly summoned to the hearing. The juvenile court entered a jurisdictional judgment, and parents now appeal the judgment.

To provide context for the parties' arguments, we begin with a brief overview of the statutory framework for service of summons in dependency cases. ORS 419B.815(1) provides that a "court may make an order establishing jurisdiction under ORS 419B.100 only after service of summons and a true copy of the petition as provided in * * * [ORS] 419B.823 [and] 419B.824." ORS 419B.823 provides, in turn:

> "The summons must be served, either inside or outside of the state, in a manner reasonably calculated under all the circumstances to apprise the person served of the existence and pendency of the juvenile proceeding and to afford the person a reasonable opportunity to appear. Service of summons may be made, subject to the restrictions and requirements of ORS 419B.824, by the following methods:

"(1)   Personal service of the summons and petition upon the person to be served;

"(2)   Substituted service by leaving a copy of the summons and petition at a person's dwelling house or usual place of abode;

"(3)   Office service by leaving the summons and petition with a person who is apparently in charge of an office;

"(4)   Service by mail; or

"(5)   Alternative service as ordered by the court under ORS 419B.824(5)."

Finally, ORS 419B.824(1) to (5) provides instructions on the steps required to serve a party with summons under each of the service methods listed in ORS 419B.823(1) to (5).

Parents seek to have the jurisdictional judgment reversed. They raise four assignments of error; however, they present a single combined argument in which they contend that they were not properly served with the summons and, consequently, that the jurisdictional judgment is invalid. Parents posit that DHS was required to use one of the specific methods listed in ORS 419B.823(1) to (5) to serve them. Parents understand the court to have ordered alternative service of summons and note that, under ORS 419B.824(5), alternative service can be ordered only if parents cannot be served as provided in ORS 419B.823(1) to (4). Consequently, they argue, because DHS had not attempted to serve them using the methods specified in ORS 419B.823(1) to (4), the court lacked authority to authorize the use of alternative service under ORS 419B.823(5). They conclude, therefore, that DHS did not serve them with the summons using any of the methods authorized in ORS 419B.823 and, hence, that the juvenile court erred in entering the jurisdictional judgment.

DHS responds with two arguments. First, it contends that parents' argument is unpreserved because, to preserve their argument, parents were required to move under ORS 419B.923 to set the jurisdictional judgment aside. We reject that argument without written discussion. On the merits, DHS asserts that ORS 419B.823 requires only that DHS serve parents with the summons "in a manner reasonably calculated * * * to apprise the person served"

of the juvenile court proceeding. DHS contends that the methods that it used to serve parents with the summons were reasonably calculated to do that and, hence, that its service of summons complied with ORS 419B.823.

ORS 419B.823 and ORS 419B.824 were enacted in 2001 as part of a bill introduced on behalf of the Oregon Law Commission's Juvenile Code Revision Work Group, which had undertaken the task of rewriting the juvenile code. *See* Tape Recording, Senate Judiciary Committee, HB 2611, Apr 30, 2001, Tape 114, Side A (testimony of Sen Kate Brown, member of Oregon Law Commission's Juvenile Code Revision Work Group). The work group modeled ORS 419B.823 and ORS 419B.824—the statutes that govern service of process in dependency cases—on ORCP 7 D—the rule that governs the service of process in most civil cases. *See* Testimony, Senate Judiciary Committee, HB 2611, Apr 30, 2001, Exhibit I, "Section by Section Analysis: House Bill 2611-1" (in connection with statement of Kathie Osborn) (stating that the introductory paragraph of ORS 419B.823 was "taken from ORCP 7 D(1)" and that ORS 419B.823(1) to (3) were taken from ORCP 7 D(2)).

The Supreme Court had earlier explained in *Baker v. Foy*, 310 Or 221, 797 P2d 349 (1990), the relationship between the requirement in ORCP 7 D(1) that service be made in a manner reasonably calculated to apprise a party of the pendency of a proceeding and the service methods listed in ORCP 7 D(2) that may be used to effect service:

> "ORCP 7 D(1) sets forth a 'reasonable notice' standard for determining adequate service of summons: 'Summons shall be served * * * *in any manner reasonably calculated, under all circumstances to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend.*' * * * Rather than requiring a particular manner of service to satisfy the standard of adequate service, the rule endorses the process of examining the totality of the circumstances, to determine if the service of summons was reasonably calculated to provide defendant with notice of the action and reasonable opportunity to appear and defend.
>
> "To provide guidance for types of service that may meet the 'reasonable notice' standard of adequate service, ORCP

7 D(1) lists specific methods of service of summons. The particular methods of service described in ORCP 7 D(2) are methods which *may* be used. They are not exclusive. Absolute compliance with one of the methods of service specified in ORCP 7 D(1) is, therefore, not required for adequate service of summons on an individual defendant. What is mandatory is that whatever manner or method of service is employed by a plaintiff, it must satisfy the aforementioned 'reasonable notice' standard of adequate service of ORCP 7 D(1)."

310 Or at 224-26 (emphases in original; footnotes and citations omitted). Because ORS 419B.823 and ORS 419B.824 are modeled on ORCP 7 D, we conclude that the principles articulated by the court in *Baker* apply equally to ORS 419B.823 and ORS 419B.824.[3] Hence, we reject parents' argument that DHS had to serve them using one of the service methods listed in ORS 419B.823 in order for the service to be valid. Rather, given that DHS did not serve the summons in this case using the methods enumerated in ORS 419B.824(1) to (5), we must determine whether the methods that it did use met the requirements of due process. *See Lake Oswego Review v. Steinkamp*, 298 Or 607, 613, 695 P2d 565 (1985) ("[ORCP 7 D(1)] states that the service 'shall' meet the federal due process standard.").

Due process requires that interested parties receive "notice reasonably calculated, under all circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 US 306, 314, 70 S Ct 652, 94 L Ed 865 (1950). The "notice required will vary

---

[3] There are some minor differences between ORS 419B.823 and ORS 419B.824 and their counterpart, ORCP 7 D. For example, ORS 419B.823 has a separate subsection for each method of service that a party may use to serve another party, while ORCP 7 D(1) lists in a single subsection each method that a party may use. Additionally, there are some differences in how parties "may" effectuate service under the enumerated alternatives. For example, ORCP 7 D(2)(d)(i) states that, to serve a person by mail, a party may send the person a copy of the summons and complaint "by first class mail and by any of the following: certified, registered, or express mail with return receipt requested." In contrast, ORS 419B.824(4) states that, for mail service to be effective in a dependency case, the recipient must sign a receipt for the mail. However, those minor differences do not alter the fact that the legislature structured ORS 419B.823 and ORS 419B.824 to work the same way as ORCP 7 D and retained the same standard for determining the adequacy of service of summons.

with circumstances and conditions." *Walker v. Hutchinson*, 352 US 112, 115, 77 S Ct 200, 1 L Ed 2d 178 (1956). "[T]he constitutionality of a particular procedure for notice is assessed *ex ante*, rather than *post hoc*." *Jones v. Flowers*, 547 US 220, 231, 126 S Ct 1708, 164 L Ed 2d 415 (2006). Here, the record shows that DHS served parents with summons by posting it on the door to parents' home, by e-mailing it to parents, and by mailing it to them at their home. We turn to whether that service complies with the requirements of due process.

The United States Supreme Court has stated that service by posting a summons or similar notice on a dwelling will, in most cases, "offer [a] property owner sufficient warning of the pendency of [a] proceeding." *Greene v. Lindsey*, 456 US 444, 452, 102 S Ct 1874, 72 L Ed 2d 249 (1982). The plaintiffs in *Greene* had been served with summons in forcible entry and detainer (FED) actions by posting copies of writs of forcible detainer on the doors to their apartments. The plaintiffs brought a class-action suit alleging that they had not received constitutionally adequate notice of the FED proceedings because notices posted on apartment doors were "not infrequently" torn down by children or other tenants. *Id.* at 453 (internal quotation marks omitted). Although the Court concluded that, in light of the history of the removal of posted summons in the community in *Greene*, posting did not meet the requirements of due process, the Court indicated that posting may nonetheless be sufficient to satisfy due process in other cases. *See id.* at 455. Here, nothing suggests that the summons, once posted on the door of parents' home, might be removed by someone other than parents. Furthermore, there is evidence that parents were visiting their home: the property had a sign directing people to stay away, parents' neighbors had told Garrett that parents were visiting the property at night, and parents had left their pets in the home. Those facts suggest that parents were regularly at their home and support a determination that posting the summons would provide parents with notice of the proceeding. However, we need not determine whether posting the summons on the door to parents' home, without more, would constitute constitutionally adequate notice, because DHS also used other means to serve parents with the summons.

Service of summons by mail can meet the due process standard for notice of a court proceeding. *See, e.g., Greene,* 456 US at 455. However, service by mail in this case did not meet the statutory standard specified in ORS 419B.824(4), which states that service by mail in a dependency case "is not complete unless the person to be served signs a receipt for the mail." The mailing occurred here under circumstances in which it was unlikely that parents would accept delivery of certified mail sent to their home—DHS had previously tried and failed to contact parents at their home during the day, when mail carriers typically deliver certified mail. Mailing the summons and petition to parents nonetheless increased, even if only marginally, the likelihood that they would receive notice of the proceeding and, consequently, it makes it more likely that DHS met the due process standard for service of summons.

Finally, service of summons by e-mail also may satisfy due process. *See Rio Properties, Inc. v. Rio Intern. Interlink,* 284 F3d 1007, 1017 (9th Cir 2002) ("Considering the facts presented by this case, we conclude not only that service of process by email was proper * * * but in this case, it was the method of service most likely to reach [defendant]."). By sending an e-mail note with copies of the summons and petition to an e-mail address at which DHS had recently exchanged e-mail notes with father, DHS measurably increased the likelihood that parents would receive a copy of the summons and petition and, hence, notice of the pendency of the proceedings.

We recognize that whether parents received constitutionally adequate notice is a fact-specific determination. However, we conclude that, taken together, the methods that DHS used to serve parents were reasonably calculated to apprise them of the proceeding and, hence, that service met the due process standard embodied in the first sentence of ORS 419B.823. Therefore, we conclude that the trial court did not err in entering the jurisdictional judgment that was premised on service of summons on parents.

Affirmed.