Argued and submitted March 1, affirmed May 18, 2016

In the Matter of W. G. Z.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. G. A. B.,
*Appellant.*

Deschutes County Circuit Court
14JV0285;
Petition Number 7192152;
A160183

374 P3d 1014

Sarah Peterson, Deputy Public Defender, argued the cause for appellant. With her on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**FLYNN, J.**

Mother appeals from a judgment terminating her parental rights to her six-year-old daughter after a hearing conducted in mother's absence. Mother contends that the Department of Human Services (DHS) failed to properly serve the termination petition and summons when it used the method of service by publication in a newspaper with general circulation in Deschutes County. Mother raises multiple assignments of error, all based on the premise that DHS had information that mother was located in Florida and was required to disclose that information in seeking authorization to serve by publication. We conclude that, on the record before it, the court correctly determined that the service by publication in Deschutes County was adequate to permit the court to terminate mother's parental rights in her absence.

The relevant facts are primarily procedural. Mother's child came into DHS care in Deschutes County in February 2012, and the juvenile court in Deschutes County took jurisdiction over her in April 2012. The last contact that DHS had with mother was in October 2014. In November 2014, the juvenile court held a permanency hearing at which the plan for child was changed from reunification to adoption. Mother did not attend that hearing.

In December 2014, DHS filed a petition to terminate mother's parental rights. In February 2015, after DHS had attempted, unsuccessfully, to personally serve mother with the petition and court summons, it filed a motion requesting authorization to serve the summons by publication in a newspaper with general circulation in Deschutes County. In support of the motion, a paralegal for DHS filed an affidavit describing her unsuccessful efforts to locate a valid address for mother, including searching the records of numerous state agencies, records of the federal bureau of prisons, and two publicly available locator websites. The affidavit recited that the paralegal found five different addresses for mother in or near Deschutes County and two in the Portland, Oregon, area, none of which were current. The affidavit also represented that the paralegal found mother's account on the social network website Facebook.com, and that mother

had "posted that she resided in the Bend, Oregon area," the location of the Deschutes County Circuit Court. The affidavit omitted information that mother's Facebook page also contained a reference to mother being in Florida. The court granted DHS's motion, and mother was served by publication in the Bend Bulletin.

At the termination hearing in July 2015, mother did not appear, and mother's attorney argued that the service by publication was ineffective because the summons and petition needed "not only" to be published in Deschutes County "but also" in a paper in the Florida area of Tampa/ St. Petersburg. Before addressing mother's challenge to service, the court took testimony from a DHS caseworker, who testified that the paralegal who performed the address search "was able to locate the mother via Facebook. And on her Facebook, she had listed that she was in Florida, close to Tampa."

The juvenile court found that DHS did not have enough information about mother's location in Florida to view it as a "location that might reasonably result in actual notice" to mother and, on that basis, ruled that the order authorizing service by publication was adequate. The court conducted the hearing on the merits in mother's absence and ordered termination of mother's parental rights.

On appeal, mother raises six assignments of error that present variations of the same fundamental premise— that service by publication in Deschutes County was not adequate given the information that DHS possessed about mother's presence in Florida, and that the inadequate service prevented the court from terminating mother's parental rights in her absence. Before addressing mother's specific arguments, we discuss the applicable law.

The juvenile court is authorized to terminate parental rights in a parent's absence, but may do so "only after service of summons and a true copy of the petition on the parent." ORS 419B.819(1), (7). Whether the service was sufficient presents a question of law, but we accept the trial court's findings of fact pertinent to that determination "if they are supported by evidence in the record." *See also Dept. of Human Services v. K. M. J.*, 276 Or App 823, 370 P3d

1258 (2016) (whether the court was authorized to terminate mother's parental rights is a legal question that we review for errors of law); *Hoeck v. Schwabe, Williamson & Wyatt*, 149 Or App 607, 615, 945 P2d 534 (1997) (describing standard of review for questions of sufficiency of service under ORCP 7 D).[1]

Service by publication, the method used here, is essentially a method of last resort. The juvenile code lists several acceptable forms of service (personal service, substituted service, office service, service by mail) and allows the court to authorize an "alternative" method or methods of service only if the parent cannot be served by one of the listed methods. ORS 419B.823; ORS 419B.824(5). Even when the court authorizes "alternative" service, the court may order service "by publication," only "[o]n written motion and affidavit that service cannot be made" by one of the other, specified methods of alternative service—including mailing the summons to one or more addresses or posting the summons "at specified locations." ORS 419B.824(5)(a), (6)(a).

We begin by considering mother's fundamental premise, that the court did not validly authorize service by publication in Deschutes County because DHS failed to disclose that mother's Facebook page indicated she was in Florida. The validity of an order authorizing service by publication has two components: (1) whether service by publication is properly authorized at all and (2) whether the manner of service by publication is authorized. *See* ORS 419B.824(6); *see also Huffman v. Leon de Mendoza*, 135 Or App 680, 684-85, 899 P2d 734 (1995), *rev den*, 322 Or 489 (1996) (describing a similar two-stage inquiry for validity of service by publication pursuant to ORCP 7 D).

A court may authorize service by publication on the basis of a "written motion and affidavit" from which it can be determined that DHS is unable to accomplish service through any of the other methods specified in the juvenile

---

[1] The statutes governing service of process in dependency cases are modeled on ORCP 7 D, which governs service of process in civil cases generally. *Dept. of Human Services v. K. L.*, 272 Or App 216, 222, 355 P3d 926 (2015) (citing Testimony, Senate Judiciary Committee, HB 2611, Apr 30, 2001, Ex I, "Section by Section Analysis: House Bill 2611-1").

code. The affidavit in this case satisfied that requirement by documenting extensive and unsuccessful efforts to identify an address for mother at which service could be accomplished by any means short of publication. Indeed, we do not understand mother to contend otherwise.

Rather, we understand mother to focus her challenge on the fact that service was accomplished by publication exclusively in Deschutes County. Several requirements govern the manner of publication when service by publication is authorized. An order for service by publication "must direct that publication be made in a newspaper of general circulation in the county where the action is commenced or, if there is no such newspaper, in a newspaper to be designated as most likely to give notice to the person to be served." ORS 419B.824(6)(c).

However, if DHS "knows of a specific location other than the county where the action is commenced where publication might reasonably result in actual notice," then the department must "so state in the affidavit" accompanying the motion for service by publication, "and the court may order publication in a comparable manner at such location in addition to, or in lieu of, publication in the county where the action is commenced." *Id.* Moreover, service by publication, like all methods of service, is governed by the overarching requirement that "summons must be served, either inside or outside of the state, in a manner reasonably calculated under all the circumstances to apprise the person served of the existence and pendency of the juvenile proceeding and to afford the person a reasonable opportunity to appear." ORS 419B.823; *see also Dept. of Human Services v. K. L.*, 272 Or App 216, 223, 355 P3d 926 (2015) ("Due process requires that interested parties receive 'notice reasonably calculated, under all circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections.'" (Quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 US 306, 314, 70 S Ct 652, 94 L Ed 865 (1950).)).

Mother argues that DHS possessed information about mother's presence in Florida that constituted knowledge of "a specific location other than" Deschutes County

in which publication might reasonably result in notice to mother. She argues that the omission prevented the court from issuing an authorization for publication that was "reasonably calculated" to reach mother. DHS responds that "there is nothing in the record to support an inference that DHS knew of mother's specific location, or knew of any area in which publication might reasonably result in mother receiving 'actual notice.'"

We agree with mother that, if DHS knew that mother was staying in the Tampa/St. Petersburg, Florida area, that would qualify as a "specific location" that DHS needed to bring to the attention of the court *if* DHS knew that mother's contact with the area was sufficient to make it an alternative location in which publication "*might* reasonably result in actual notice." ORS 419B.824(6)(c) (emphasis added).[2] We disagree, though, with her characterization of the record.

Mother contends that DHS had sufficient knowledge about mother's presence in Florida to require it to include the information in its affidavit because DHS "knew that mother was not in Deschutes County" and "knew that mother had left Oregon for Florida." Nothing in the record supports mother's characterization of what DHS "knew." The only evidence about DHS's knowledge regarding mother's location is the description in the affidavit and in the caseworker's testimony of what the paralegal saw when she looked at mother's Facebook page. The evidence did not establish that the Facebook page indicated mother resided in Florida or even that she would be there for any length of time.

The caseworker testified that, when the paralegal found mother's Facebook page, mother "had listed that she was in Florida, close to Tampa." However, the affidavit from the paralegal also represented that mother's Facebook page still indicated that she "resided in the Bend, Oregon area."

---

[2] We emphasize that it is up to the trial court reviewing a request to authorize service by publication, not the party seeking the authorization, to decide whether summons should be published in a location other than the county in which the action is commenced. The court cannot make that determination if DHS withholds location information.

Mother does not challenge the veracity of that representation, the Facebook page is not part of the record, and mother's attorney did not ask any questions of the DHS caseworker to clarify the ambiguous nature of what DHS learned from mother's Facebook reference to being "in Florida."

The trial court found that the information that DHS possessed was too tenuous for DHS to understand Florida to be a "location that might reasonably result in actual notice" to mother, and the record supports that finding. Given the state of the record, the trial court correctly determined that the DHS affidavit was sufficient and, therefore, that the court was authorized to order service by publication solely in Deschutes County.

Mother also argues, however, that, regardless of the validity of the affidavit, publication solely in Deschutes County was not reasonably calculated to reach mother. We disagree. Beyond the fact that Deschutes County has jurisdiction over the child, at least two prior hearings on the case were held in Deschutes County, including the permanency hearing held only three months before DHS sought authority to serve by publication. In addition, the affidavit recites that mother's last known address was in Deschutes County and that mother reported on her Facebook page that she still resided in Deschutes County. Mother does not dispute either recitation. "[U]nder all the circumstances," publication in Deschutes County was "reasonably calculated" to apprise mother of the "existence and pendency" of the termination proceeding, and the evidence regarding mother's presence in Florida is too tenuous for us to conclude that publication in Florida was also required. ORS 419B.823.

Affirmed.